**CITY OF ERIE, Appellant**

v.

**FRATERNAL ORDER OF POLICE, LODGE 7.**

Commonwealth Court of Pennsylvania.

Argued May 4, 2009.

Decided June 5, 2009.

---

■■

Gerald J. Villella, Erie, for appellant.

Eric C. Stoltenberg, Pittsburgh, for appellee.

BEFORE: PELLEGRINI, Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SIMPSON.

Under review is a grievance arbitration award ordering the City of Erie (City) to reinstate a Partial Lump Sum Deferred Option Plan (PLSDO), described below, for the benefit of its police bargaining unit. The City assigns error in the arbitration award on three grounds: the arbitrator lacked jurisdiction; the award violates the law; and, alternatively, the parties' agreement with regard to the PLSDO lacked a meeting of the minds. Discerning no merit in the City's assertions, we affirm.

## I. History

The origins of this case relate back to 2001. In that year, an interest arbitration panel issued an award in favor of the Fraternal Order of Police, Lodge No. 7 (Union) that included a Deferred Retirement Option Plan (DROP). The DROP allowed police officers who achieved the age and years of service for retirement to make an election after they became eligible to retire and up to three years before retiring to drop from the pension plan, continue to work and be paid until they retire. *See City of Erie v. Haas Mem'l Lodge # 7 Fraternal Order of Police*, 811 A.2d 1071 (Pa.Cmwlth.2002), *appeal denied*, 573 Pa. 692, 825 A.2d 640 (2003) (*Erie I*). The City appealed to the Court of Common Pleas of Erie County (trial court).

On review, the trial court rejected the City's assertions the arbitration panel failed to consider the DROP's impact on

the stability of the Police Pension Plan in violation of the Municipal Pension Plan Funding Standard and Recovery Act (hereinafter "Act 205").[1] Specifically, the trial court found an actuarial report referred to the DROP in its valuation of the Police Pension Plan. It also appeared to the trial court that an actuarial expert testified. The trial court therefore denied the City's petition to set aside the arbitration award.

The City appealed. Initially, we determined the certified record lacked a cost estimate as required by Act 205. *Erie I.* In addition, the absence of transcripts from the arbitration proceedings made it impossible to verify the actuary's testimony. Consequently, we concluded the record lacked support for the conclusion the arbitration panel must have considered expert testimony in its award. *Id.* Accordingly, we reversed.

The Union appealed our decision in *Erie I* to the Supreme Court. While the appeal petition was pending, the City and the Union entered into settlement negotiations. The City proposed the current PLSDO. As part of its proposal, the City included a proposed amendment to the City's Pension Plan Ordinance (Pension Ordinance), which detailed the PLSDO provisions. After modifications, the Union ultimately approved the proposed PLSDO.

For its part, the City retained an expert in tax law and municipal pension plans. Upon review, the expert submitted to the Police Pension Board a proposed amendment to the Pension Ordinance. The expert and the City believed the proposed amendment sufficiently addressed the Board's concerns regarding possible tax consequences of the PLSDO on the Pension Plan.

The City thereafter adopted the PLSDO ordinance in 2003. The PLSDO allows: participants who had reached certain age and length of service requirements to select a "pension look-back date" which preceded their actual termination date by 12, 24, or 36 months. For purposes of pension calculation, the pension look-back date would be used as the effective date for the participant's retirement benefits. The participant would continue to work for the City, but no longer accrue seniority or service credit. The participant was required to continue contributing to his/her pension plans between the look-back date and the date of employment termination. Following the participant's termination of employment, he/she would receive his/her normal retirement benefits determined as of the pension look-back date, as well as a lump sum cash distribution equal to the participant's monthly retirement benefit, multiplied by the number of months elected in the PLSDO.

*City of Erie v. Dep't of Auditor Gen.*, 961 A.2d 234, 235 (Pa.Cmwlth.2008) (*Erie II*). In February 2005, the City reinstated its Pension Ordinance in its entirety so as to include the PLSDO.

Because the City receives state aid under Act 205, the Auditor General conducted an audit of the City's aggregate pension plan for the compliance period January 1, 2003 through December 31, 2004. *See* Section 402 of Act 205, *amended by* the Act of July 11, 1990, P.L. 505, 53 P.S. § 895.402. The Auditor General concluded that employees selecting the PLSDO

---

1. Act of December 18, 1984, P.L. 1005, 53 P.S. §§ 895.101–895.803. The purpose of Act 205 is to strengthen municipal pension plans "by requiring actuarially-based current funding standards and by establishing state-aided, voluntary remedial rules to aid seriously underfunded pension plans in achieving compliance with the standards." *City of Erie v. Int'l Ass'n of Firefighters Local 293*, 836 A.2d 1047, 1049 n. 3 (Pa.Cmwlth.2003).

should be treated as having terminated their employment as of their look-back dates rather than their actual retirement dates. Therefore, employees electing the PLSDO were not active employees for purposes of Act 205 funding and the City was not entitled to state aid for these pension payments. As a result, the Auditor General recommended the City repay approximately $900,000 it received from the Commonwealth to aid in the funding of its police and firefighter pension plans. The City filed exceptions to the Auditor General's recommendation, which a hearing officer denied.

The City appealed to this Court. Using a statutory construction analysis, we determined the PLSDO participants experienced no limitation in job duties after electing the PLSDO and had not completed their careers as of their look-back dates. As such, they were "active" employees for purposes of Act 205. Thus, the City was not required to reimburse the Commonwealth for the state aid it received for PLSDO participants. *Erie II.* The Auditor General filed a petition for allowance of appeal with the Supreme Court. The petition remains pending.

After the Auditor General's report but before our decision in *Erie II*, the City repealed the PLSDO ordinance. The City did not negotiate with the Union over the repeal and, consequently, the Union filed a grievance against the City. The resulting arbitration award is the subject of this appeal.

## II. Arbitration Proceedings

The City initially challenged the arbitrator's jurisdiction over the Union's grievance. It asserted the parties' collective bargaining agreement (CBA),[2] did not incorporate the Pension Ordinance. Since the arbitration was limited to disputes concerning provisions of the CBA, and the Pension Ordinance is not part of the CBA, the City maintained the arbitrator lacked jurisdiction. Alternatively, the City argued that even if the CBA incorporated the Pension Ordinance, the parties assumed the PLSDO would have no impact on Act 205 funding. Since the Auditor General concluded otherwise, the City claimed, the PLSDO cannot stand.

The arbitrator rejected the City's assertions and sustained the Union's grievance. In particular, the arbitrator found the language of Section XIV(D) of the CBA, below, sufficient to incorporate by reference the Pension Ordinance, including the PLSDO ordinance, into the CBA. *See* Original Record (O.R.), Ex. J–1 (Master Contract between City and Union, 1/1/06–12/21/08) at N2. Since the CBA grants the arbitrator jurisdiction over the interpretation, application or an alleged violation of the CBA, and the CBA incorporated the Pension Ordinance, the arbitrator concluded the City's failure to bargain over the repeal of the PLSDO fell within his jurisdiction.

On the issue of whether the City violated the CBA, the arbitrator found the City lacked authority to unilaterally repeal the PLSDO without collective bargaining. The arbitrator rejected the City's contrary assertions, noting the City admittedly negotiated with the Union over the PLSDO. As further support, the arbitrator recognized the Auditor General determined only that the City was not entitled to state aid for PLSDO pensions. The arbitrator also found it important to note the City unilaterally repealed the PLSDO at the expense

---

2. The collective bargaining agreement (CBA) at issue was effective January 1, 2006 through December 31, 2008.

of participating employees. As a final matter, the arbitrator dismissed the City's claims the parties assumed the PLSDO would not affect Act 205 funding.

 Accordingly, the arbitrator sustained the Union's grievance and ordered the City to reinstate the PLSDO. He further ordered the City to wholly compensate Union members adversely affected by the repeal of the PLSDO. On the City's appeal, a different trial judge affirmed. This appeal followed.[3]

### III. Current Appeal

The City raises the same arguments presented below. It asserts the arbitrator lacked jurisdiction over the dispute because the parties' CBA does not incorporate by reference the Pension Ordinance. The City also contends the arbitrator's award is contrary to law because the Auditor General determined the City was not entitled to state aid for the PLSDO pensions. In the alternative, the City maintains if it is determined the parties' negotiations regarding the PLSDO constituted an agreement, the agreement lacked the required meeting of the minds.

### A. Jurisdiction

 In its first assignment of error, the City contends the arbitrator lacked juris-

diction over the Union's grievance because the CBA did not incorporate by reference the Pension Ordinance. The City cites our decision in *Plainfield Township Policemen's Association By and Through Straka v. Pennsylvania Labor Relations Board,* 695 A.2d 984 (Pa.Cmwlth.1997), as support. There, the township amended its police pension ordinance to reduce the number of service years required for pension eligibility. Subsequently, the Auditor General informed the township that the lower number of service years did not comply with the Police Pension Fund Act.[4] The township again amended its police pension ordinance to restore the higher number of service years for pension eligibility.

The Pennsylvania Labor Relations Board (PLRB) rejected the union's ensuing unfair labor practice charge. It concluded the number of service years for retirement had never been the subject of collective bargaining. On appeal, this Court affirmed. We explained the police association could not rely on the pre-existing ordinance addressing police pensions where the applicable CBA, as well as prior CBAs, failed to incorporate by reference the pension ordinance.

The City contends the same situation is presented here. The problematic term, the PLSDO, is not explicitly included in

---

3. Our review of an arbitrator's grievance award is in the nature of narrow *certiorari*. *City of Scranton v. E.B. Jermyn Lodge No. 2 of Fraternal Order of Police,* 965 A.2d 359 (Pa. Cmwlth.2009). Narrow *certiorari* allows us to inquire into four aspects of an arbitration award: the jurisdiction of the arbitrator; the regularity of the proceedings; whether the arbitrator exceeded his authority; and whether the arbitrator deprived one of the parties of constitutional rights. *Id.* Generally speaking, a plenary standard of review should govern the preliminary determination of whether the issue involved implicates one of the four areas of inquiry, thus allowing for a deferential review "unless, of course, that prelimi-

nary determination itself depended to some extent upon arbitral fact-finding or a construction of the relevant CBA." *Town of McCandless v. McCandless Police Officers Ass'n,* 587 Pa. 525, 540, 901 A.2d 991, 1000 (2006). We may not disregard the arbitrator's findings or contract interpretation if the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority. *City of Pittsburgh v. Fraternal Order of Police Fort Pitt Lodge No. 1,* 764 A.2d 101 (Pa.Cmwlth.2000).

4. Act of May 29, 1956, P.L. (1955) 1804, *as amended,* 53 P.S. §§ 767–78.

the CBA. The CBA's mere reference to the Pension Ordinance is insufficient.

The City's reliance on *Plainfield Township* is misplaced. Unlike the CBA in *Plainfield Township,* the CBA in this case addresses police pensions. The relevant inquiry is therefore whether the language of the CBA is sufficient to incorporate by reference the Pension Ordinance.

Although addressing a different area of civil law, land use, our Supreme Court's decision in *Kassouf v. Township of Scott,* 584 Pa. 219, 883 A.2d 463 (2005), provides guidance on this issue. In *Kassouf,* a land developer sought final approval of a subdivision plan. In several correspondences, the township engineer specifically enumerated the defects in the developer's subdivision plan. The township commissioners thereafter denied the developer's application for final approval. In a written determination, the commissioners' listed 16 reasons for denying the application. The developer appealed to the court of common pleas and asserted, among other things, he was entitled to a deemed approval of his application because the commissioners' letter did not satisfy the requirements of the Pennsylvania Municipalities Planning Code (MPC).[5]

The common pleas court affirmed on the basis the commissioners' denial letter sufficiently complied with the MPC where it incorporated by reference the township engineer's correspondences. This Court affirmed.

On further appeal, the Supreme Court reversed. Finding no impediment to incorporation by reference, the *Kassouf* Court explained:

The fact that there is no absolute impediment to incorporation by reference, however, does not mean that any

and all references to supporting documentation will provide, as a substantive matter, an adequate articulation of the reasons for denial purposes of [the MPC]. In this regard, the supposed incorporation here is far less clear, and far less obviously adequate, than was the explicit incorporation by reference in [*Advantage Development, Inc. v. Board of Supervisors of Jackson Township,* 743 A.2d 1008 (Pa.Cmwlth.2000)]. In the case *sub judice,* the township commissioners' decision letter does not refer to a specific report, identifiable by title or date or subject matter. Nor do the words "incorporate by reference" appear in the letter, and the commissioners did not attach any particular report or letter which they were supposedly incorporating by reference....

*It may well be ... that the surrounding context indicates that the commissioners were referring exclusively or primarily to the township engineer's final letter ... especially given the commissioners' repeated references to that specific letter.... And perhaps it is so that, even without using the language "incorporate by reference," or attaching the incorporated document, the township commissioners' decision nevertheless intended to incorporate and rely upon the engineer's ... letter.* However, we agree with [the developer] that the subdivision applicant should not be left to guess at whether the township was truly relying upon an external document in lieu of its own ... statement. Nor should the applicant be left to guess as to which of multiple documents is the one that would serve as the "incorporated" basis for the decision.

584 Pa. at 233–234, 883 A.2d at 472 (emphasis added).

5. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11202.

Factually distinguishable, *Kassouf* nevertheless demonstrates the words "incorporate by reference" need not explicitly appear in an agreement if there are sufficient indicia that the parties intended to effectuate incorporation and the documents incorporated are readily identifiable.

Applying *Kassouf* here, Article XIV(D) of the CBA provides:

> The City and the [Union] have agreed that the present pension plan as operated by the [Pension Board] is to continue according to the provisions as set forth by separate agreement.

O.R., Ex. J-1 at N2.

Article XIV(D) is the only CBA provision relating to the police pension, and it refers to a separate agreement which encompasses the agreed upon terms of the pension plan. The City does not assert the pension plan referenced in Article XIV(D) is governed by some agreement other than the Pension Ordinance. To the contrary, the Pension Ordinance, found in Article 147 of the City Ordinances, fully embodies the terms of the Police Pension Plan. O.R., Ex. J-3. The evidence shows there is only one document governing pension rights. In this case, the Pension Ordinance represents the parties' complete agreement regarding this employment benefit.[6]

Accordingly, we discern no error in the arbitrator's determination the CBA incorporated by reference the Pension Ordinance which, in turn, provided the arbitrator with jurisdiction over a dispute concerning an "alleged violation of a specific term or provision" of the CBA. *See* O.R., J-1, at O1 (regarding settlements of disputes).

### B. Violation of the Law

In its second assignment of error, the City urges the arbitrator's award requiring reinstatement of the PLSDO is unlawful by virtue of the Auditor General's determination the City is not entitled to state aid for pension payments made as part of the PLSDO. The City's argument fails for factual and legal reasons.

Factually, the Auditor General's report did not pass judgment on the legality of the PLSDO. O.R., Ex. J-5. While the City's concerns regarding the fiscal irresponsibility of engaging in future battles on the issue of Act 205 funding for PLSDO payments are reasonable, such concerns cannot take away from the fact the Auditor General has no authority to declare the PLSDO illegal. What is more, and which

---

6. The arbitrator relied on the PLRB's decision in *Midland Police Bargaining Association v. Midland Borough*, 26 Pa. Pub. Employee Rep. § 26139 (Final Order 1995), to conclude jurisdiction existed. There, the parties' past CBAs included a provision allowing for waiver of employee pension contributions if an actuarial study determined the contributions were not necessary. Between 1986 and 1993, actuarial studies supported waiving employee contributions. In 1994, the parties agreed in the CBA that "all past practices and benefits currently enjoyed by the POLICE shall remain 'AS IS' and in full force and effect." *Id.* That same year, an actuarial study determined employee contributions were necessary to fund the pension. The borough subsequently began deducting pension contributions from employee wages. The PLRB denied the police association's ensuing unfair labor charge. It determined the relevant CBA provided all benefits were to remain "AS IS," and the established practice was to waive contributions only where actuarially supported. Because the borough acted consistent with the past practice and the parties' agreement, the borough did not commit an unfair labor practice by unilaterally implementing the employee contributions.

We find the PLRB's *Midland* decision persuasive on this issue. As noted by the arbitrator, CBAs often do not recite every provision of a comprehensive pension plan but rather incorporate by reference the plan's benefits.

is not at issue here, the City concedes it may have authority to create a PLSDO. City's Br. at 8. So long as City Council acted within the scope of its authority in passing the PLSDO, the courts may not disturb its action. *Will v. City of Erie*, 763 A.2d 566 (Pa.Cmwlth.2000); *see also City of Lancaster v. Fire Fighters Local Union No. 319*, 834 A.2d 676 (Pa.Cmwlth.2003) (Optional Third Class City, like the City here, possesses broad powers of self-government subject only to express or implied prohibitions).

■ In addition, the City's argument lacks legal support. The City would not be relieved of its duty to make this benefit available to Union members even if we assumed the PLSDO violates positive law. In *Pittsburgh Joint Collective Bargaining Committee v. City of Pittsburgh*, 481 Pa. 66, 391 A.2d 1318 (1978), the Supreme Court rejected the city's assertions that a CBA's grievance arbitration provisions violated statutory law. Stressing the importance of the development and maintenance of harmonious relationships between the public employer and its employees, the Court explained that good faith bargaining required questions as to the legality of proposed terms of a CBA to be resolved at the bargaining stage. Otherwise, allowing a party to refuse to abide by terms upon which it agreed would foster discord and distrust. Thus, the city was required to abide by the CBA's grievance procedures. *See also Fraternal Order of Police E.B. Jermyn Lodge No. 2 By Tolan v. Hickey*, 499 Pa. 194, 452 A.2d 1005 (1982); *Fayette County Bd. of Comm'rs v. Am. Fed. of State, County & Mun. Employees, Council 84*, 692 A.2d 274 (Pa.Cmwlth.1997).

Here, the City, having initially proposed the PLSDO to the Union and effectively negotiated the plan's benefit, is contractually bound to fulfill the PLSDO's terms so long as it remains part of the CBA.

Finally, the City's argument disregards this Court's decision in *Erie II* where we held the Auditor General erred in determining police officers who elected the PLSDO should be treated as retiring as of their look-back dates and not the date of actual retirement. Our decision makes clear the City is entitled to reimbursement under Act 205 for its PLSDO payments. *Erie II* is binding unless overruled by the Supreme Court or other compelling circumstances for reversal are shown. *Pries v. Workers' Comp. Appeal Bd.* (Verizon Pa.), 903 A.2d 136 (Pa.Cmwlth.2006), *appeal denied*, 592 Pa. 762, 923 A.2d 412 (2007); 1 *Standard Pennsylvania Practice 2d* § 2:279; *see also Prudential Prop. & Cas. Ins. Co. v. McAninley*, 801 A.2d 1268 (Pa.Super.), *rev'd on other grounds*, 571 Pa. 490, 812 A.2d 1164 (2002) (principle that an intermediate appellate court decision is binding applies when the Supreme Court has granted an appeal petition or when a petition for allowance of appeal is pending). Thus, the Auditor General lacks legal support to contest the City's inclusion of PLSDO pensions in its Act 205 funding request.

For these reasons, we discern no merit in the City's assertions the arbitrator's award violates the law.

## C. Meeting of the Minds

■ In its final argument, the City contends that if its negotiations with the Union regarding the PLSDO and their corresponding written documents constitute an agreement, then principles of contract law apply. To that end, the City asserts the parties presumed the PLSDO would not adversely affect Act 205 funding and the Auditor General's contrary holding negates the contractual requirement of a meeting of the minds. It further suggests it would not have negotiated the PLSDO

had it known the Auditor General would disapprove of its provisions.

A meeting of the minds requires the concurrence of both parties to the agreement, or they have failed to execute an enforceable contract. *Dep't of Transp. v. Pa. Indus. for Blind & Handicapped,* 886 A.2d 706 (Pa.Cmwlth.2005). Further, there must be a meeting of the minds on all terms of the contract. *Id.*

The City's meeting of the minds argument is not persuasive. The record here discloses the City's receipt of Act 205 funding was not a condition precedent to the City's passage of the PLSDO ordinance. The Union's former attorney credibly testified without contradiction the City did not condition its participation in the PLSDO on state aid. O.R., Notes of Testimony, 6/13/07, at 28. Similarly, Act 205 funding was not a basis for the Union's acceptance or rejection of the City's proposed PLSDO. *Id.*

More importantly, the City initially proposed the PLSDO and negotiated its provisions with the Union. After an agreement was reached regarding the PLSDO's terms, the City passed an ordinance based on the agreement. It cannot now claim the parties did not have a meeting of the minds regarding the terms of the PLSDO.[7]

### IV. Conclusion

As explained above, we discern no error in the arbitrator's award requiring the City to reinstate the PLSDO and to wholly

compensate Union members adversely affected by the City's unilateral repeal of the PLSDO. Accordingly, we affirm the order of the trial court denying the City's petition to set aside the arbitration award.

### O R D E R

AND NOW, this 5th day of June, 2009, the order of the Court of Common Pleas of Erie County is **AFFIRMED.**

---

**7.** Although the City frames its argument as a lack of meeting of the minds, it appears, instead, to argue mistake. However, a party's failure to anticipate all possible repercussions of a bargained agreement is insufficient to render the agreement invalid. *Simeone v. Simeone,* 525 Pa. 392, 581 A.2d 162 (1990). Further, "[a] party bears the risk of a mistake when ... (b) he is aware, at the time the

[agreement] is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient." RESTATEMENT (SECOND) OF CONTRACTS § 154 (1981). Here, it appears the parties did not investigate the possible consequences of the PLSDO on Act 205 funding.