J-A33029-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JACK J. COLE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LAURA M. COLE | |
| Appellant | No. 606 WDA 2016 |

Appeal from the Decree Dated March 31, 2016
In the Court of Common Pleas of Fayette County
Civil Division at No(s): 812 of 2015 G.D.

BEFORE:  LAZARUS, J., SOLANO, J., and STRASSBURGER, J.[*]

MEMORANDUM BY SOLANO, J.:                    **FILED APRIL 24, 2017**

Appellant Laura M. Cole ("Wife") appeals from the March 31, 2016 divorce decree, which made final the court's June 30, 2015 order.  That order granted the petition of Appellee Jack J. Cole ("Husband") to confirm a settlement agreement and stay Wife's claim for spousal support.  We affirm.

The issue in this case is whether the parties entered into an enforceable oral postnuptial/marital settlement agreement.[1]  The trial court set forth the relevant facts as follows:

> In April 2015, Plaintiff Husband met with his attorney, Michelle Kelley, Esquire, in order to discuss an agreement for the division of marital property.  One week later [on April 8, 2015],

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Wife refers to the agreement as a postnuptial agreement, while Husband refers to it as a marital settlement agreement.

the parties together met at the office of Plaintiff Husband's attorney, and they engaged in discussions concerning the division of their assets, resulting from their separation. During this meeting, the parties provided Attorney Kelley a handwritten, two-page document which sets forth a list of various assets and provisions. The document was prepared in Husband's handwriting when the parties met together prior to meeting with Attorney Kelley, and during the meeting between the parties, they agreed upon certain assets that would be retained and/or transferred to each of them. The parties referred to this document during their meeting with Attorney Kelley, and during the joint meeting, Attorney Kelley made notes on the document pertaining to the terms of the parties' agreement.

During their meeting with Attorney Kelley, the parties discussed the value of the marital home, for which they had an appraisal, and they discussed the equity in the home. The parties stipulated that the furnishings in the marital home are valued at $40,000.00. According to testimony from Attorney Kelley, the parties discussed the equity in the vehicles owned by the parties, their respective retirement accounts, and the amount and duration of alimony to be paid to [Wife]. The parties discussed the value of each of their marital assets, as well as the total asset distribution to Wife and to Husband. It was apparent to Attorney Kelley that the parties ha[d] previously discussed the distribution of their assets. Attorney Kelley testified that the parties knew about and understood each of the assets discussed at the meeting. Attorney Kelley informed both parties that she need[ed] to "know clearly" what they [were] agreeing on. Attorney Kelley testified that the parties had a "meeting of the minds" as to how each of the assets would be distributed. The parties discussed the value of each of the assets, and the distributions set forth pursuant to the handwritten list resulted in a distribution to Wife in the amount of $230,000 and to Husband in the amount of $234,500.

Based on the testimony of Attorney Kelley, it is clear that neither party was under duress, nor was there any coercion by either party during the joint meeting with Attorney Kelley. In addition, there was no evidence of any fraud or misrepresentation.

After the parties reviewed their asset distribution with Attorney Kelley, it was understood that Attorney Kelley would

prepare a written agreement to reflect the terms of their oral settlement, and they would each go back into Attorney Kelley's office to sign the agreement the following week.

Subsequent to meeting with the parties, Attorney Kelley received a phone call to inform her that Defendant Wife "changed her mind" and would not sign an agreement.[2]

Trial Ct. Op., 6/30/15, at 1-3 (pagination added). After learning that Wife would not sign the agreement, Husband told Attorney Kelley to not prepare it. N.T., 6/11/15, at 25, 44, 60-61. As a result of these calls, Attorney Kelley did not prepare a written agreement. *Id.* at 25. We further note that both Husband and Attorney Kelley testified at the hearing. Wife did not testify or present any evidence contradicting Husband and Attorney Kelley's version of the events.

On April 27, 2015, Husband filed for divorce. On May 6, 2015, Husband filed the "Petition for Special Relief to Confirm Settlement Agreement and to Stay [Wife's] Claim for Spousal Support" that is the subject of this appeal. In his petition, Husband asked the court to enter an order confirming the existence of a binding marital settlement agreement between the parties and to stay Wife's claim for spousal support.[3] On June 11, 2015, the trial court held a hearing on Husband's petition.

_____

[2] Attorney Kelley received the message approximately one week after the joint meeting.

[3] According to Husband's petition, Wife filed a claim for spousal support on April 24, 2015, at PACSES Case No. 890115268. *See* Pet. at ¶ 6. Wife's claim is not in the certified record for this case.

- 3 -

On June 30, 2015, the trial court issued an opinion and order granting Husband's petition. After the divorce decree was entered, Wife filed a timely notice of appeal.[4] On appeal, Wife presents the following issue:

> Whether the terms and conditions of a post-nuptial agreement can be held valid based upon a purported oral agreement that is not in written form and formally executed by either party.

Appellant's Brief at 4.

> We review a trial court's decision to grant special relief in divorce actions under an abuse of discretion standard as follows:
>
> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure. An abuse of discretion exists when the trial court has rendered a decision or a judgment which is manifestly unreasonable,

---

[4] In the past, we held that an order upholding a marital settlement agreement is final and immediately appealable. *See Nigro v. Nigro*, 538 A.2d 910, 913 (Pa. Super. 1988) (citing *Laub v. Laub*, 505 A.2d 290 (Pa. Super. 1986)). However, more recently we stated, "[a]lthough neither *Laub* nor *Nigro* has been expressly overruled, their precedential value with regard to appealability of an order upholding or enforcing a marital settlement agreement is in doubt." *Sneeringer v. Sneeringer*, 876 A.2d 1036, 1038 (Pa. Super. 2005). In *Sneeringer*, we noted that the Rules of Civil Procedure have been amended since *Laub* and *Nigro* were decided. *See Sneeringer,* 876 A.2d at 1038. In light of the current rules, we held in *Sneeringer* that an order addressing enforceability of a settlement agreement was not a final or collateral order, and thus was not immediately appealable. *Id.* at 1039-40. We stated that the aggrieved party would have an opportunity to challenge the order once a divorce decree had been entered. *Id.* at 1040. Accordingly, Wife followed the proper procedure in this case by waiting until the divorce decree was entered to file an appeal.

arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias or ill will.

***Prol v. Prol***, 935 A.2d 547, 551 (Pa. Super. 2007) (citations and quotation marks omitted).

Wife argues that the trial court erred as a matter of law by upholding an agreement that was not in writing and executed by the parties. Wife contends that the agreement at issue was a postnuptial agreement, and that oral postnuptial agreements are unenforceable.

In support of the agreement, Husband relied on ***Luber v. Luber***, 614 A.2d 771 (Pa. Super. 1992), ***appeal denied***, 631 A.2d 1008 (Pa. 1993). ***See*** N.T., 6/11/15, at 61-64; Trial Ct. Op., 6/13/16, at 3. In ***Luber***, after the wife filed for divorce, she and her husband set forth the terms of a settlement agreement orally, on the record, before a Master. 614 A.2d at 772. "The Master indicated that, following the parties placing their settlement agreement on the record, a document reflecting that agreement would be drafted by counsel." ***Id***. For reasons that are not clear in the opinion, the agreement was not reduced to writing. Nonetheless, this Court held that the agreement was enforceable, explaining that, "[w]here parties have reached an oral agreement, the fact that they intend to reduce the agreement to writing does not prevent enforcement of the oral agreement." ***Id.*** at 773. Wife asserts that ***Luber*** is distinguishable because (1) it involved a marital settlement incident to divorce, not a postnuptial agreement; and (2) the oral agreement in ***Luber*** was on the record. ***See*** Appellant's Brief at 10; N.T., 6/11/16, at 62-63.

In holding in favor of Husband and agreeing to enforce the parties' agreement, the trial court noted that both postnuptial agreements and marital settlement agreements are "subject to the same general contract principles." Trial Ct. Op., 6/13/16, at 1-2 (citing *Stoner v. Stoner*, 819 A.2d 529, 533 n.5 (Pa. 2003); *Simeone v. Simeone*, 581 A.2d 162, 165 (Pa. 1990); and *Luber*, 614 A.2d at 773). The trial court looked to the following general contract principles:

> There must be a meeting of the minds, which requires the assent of both parties to the agreement. *City of Erie v. Fraternal Order of Police, Lodge 7*, 977 A.2d 3 (Pa. Commw. Ct. 2009); *Quiles v. Financial Exchange Co.*, 879 A.2d 281 (Pa. Super. Ct. 2005). The intent of the parties to be contractually bound is a question of fact to be determined by the factfinder. *Luber*, 614 A.2d at 773; *see also Johnston v. Johnston*, 499 A.2d 1074 (Pa. Super. Ct. 1985). In determining the intent of the parties, it is their outward and objective manifestations of assent that matter, rather than their undisclosed and subjective intentions. As such, it is not necessary for the parties to come to a "true and actual meeting of the minds" to form a contract, so long as their manifested intent reasonably suggests their assent to the agreement. *Long v. Brown*, 582 A.2d 359 (Pa. Super. Ct. 1990); *Ingrassia Const. Co., Inc. v. Walsh*, 486 A.2d 478 (Pa. Super. Ct. 1984). Moreover, although preliminary negotiations do not constitute a contract, if the parties orally agree to all of the terms of a contract between them and mutually expect the imminent drafting of a written contract reflecting their previous understanding, that oral contract may be enforceable. *Trowbridge v. McCaigue*, 992 A.2d 199 (Pa. Super. Ct. 2010); *Storms ex rel. Storms v. O'Malley*, 779 A.2d 548 (Pa. Super. Ct. 2001); *Kazanjian v. New England Petroleum Corp.*, 480 A.2d 1153 (Pa. Super. Ct. 1984).

Trial Ct. Op., 6/13/16, at 2-3. Applying these principles, the trial court held that the parties' agreement was enforceable, even though both parties decided at the last minute not to reduce it to writing. We agree.

After careful review of the record, the parties' briefs, and the trial court's decision, we affirm on the basis of the June 13, 2016 trial court opinion by the Honorable Linda R. Cordaro. *See* Trial Ct. Op., 6/13/16, at 1, 3-4 (holding (1) the distinction between a "post-nuptial agreement" and a "marital property settlement" is not significant to this case; (2) the parties' oral agreement was enforceable because "there most certainly was a meeting of the minds between the parties as to the distribution of marital assets" despite the parties' decision not to commit the agreement to writing; and (3) there was a full disclosure of marital assets and the presence of a Master was unnecessary).

We add that in her appellate brief, Wife relies on Section 3106 of the Divorce Code and the Uniform Commercial Code's Statute of Frauds to support her argument. Wife did not mention these statutes in the trial court, and thus the trial court was not given the opportunity to address their applicability. Even assuming that Wife did not waive her reliance on these statutes, we conclude the statutes are inapplicable.

Section 3106 of the Divorce Code, entitled "Premarital agreements," provides:

> **(a) General rule.—**The burden of proof to set aside a premarital agreement shall be upon the party alleging the agreement to be unenforceable. A premarital agreement shall not be enforceable if the party seeking to set aside the agreement proves, by clear and convincing evidence, that:
>
> (1) the party did not execute the agreement voluntarily; or
>
> (2) the party, before execution of the agreement:

- 7 -

(i) was not provided a fair and reasonable disclosure of the property or financial obligations of the other party;

(ii) did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; and

(iii) did not have an adequate knowledge of the property or financial obligations of the other party.

**(b) Definition.**—As used in this section, the term "premarital agreement" means an agreement between prospective spouses made in contemplation of marriage and to be effective upon marriage.

23 Pa.C.S. § 3106. By its express terms, Section 3106 applies only to agreements "between prospective spouses made in contemplation of marriage." 23 Pa.C.S. § 3106(b). There are no such statutory regulations addressing postnuptial agreements. *Lugg v. Lugg*, 64 A.3d 1109, 1112-13 (Pa. Super. 2013). Moreover, Section 3106 deals only with actions to "set aside" a premarital agreement. Section 3106 therefore has no possible application to the agreement in this case. We note that the definition of "premarital agreement" in § 3106 is based on the definition in the Uniform Premarital Agreement Act. *See* 23 Pa.C.S. § 3106 cmt. This Uniform Act has not been enacted in Pennsylvania and, in any event, it does not apply to postmarital or settlement agreements. *See* Unif. Premarital Agreement Act § 1 cmt.

Wife argues that the requirement of a written waiver of disclosure in Section 3106(a)(2)(ii) is relevant because "post-nuptial agreements are to be reviewed under the same principles as a prenuptial agreement." Appellant's Brief at 9. But the "same principles" that apply in this context

- 8 -

are the general contract principles described by the trial court. ***See Stoner***, 819 A.2d at 533 ("traditional contract rules should be applied to marriage agreements"). Wife has not identified, and we have not found, any authority to support the proposition that statutes expressly applicable to premarital agreements also apply to postnuptial agreements. ***See Lugg***, 64 A.3d at 1112-13. We therefore find Wife's reliance on Section 3106 misplaced.

We are also unpersuaded by Wife's argument based on the Uniform Commercial Code's Statute of Frauds, 13 Pa.C.S. § 2201, *et seq.*[5] The Commercial Code applies only to contracts "for the sale of goods." 13 Pa.C.S. § 2201(a); ***see id.*** §§ 2105 (defining "goods" as including all things movable), 2106(a) (defining "sale" as "the passing of title from the seller to the buyer for a price").

Based on the foregoing and the trial court's well-reasoned analysis, we affirm. In the event of further proceedings that reference this Court's memorandum, the parties shall attach a copy of the trial court's June 13, 2016 opinion.

Order affirmed.

---

[5] Wife included an incorrect citation to the statute on page 11 of her brief, making the identity of the statute on which she relied unclear; but Wife's table of citations makes clear that she is relying on the Commercial Code provision.

- 9 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/24/2017

IN THE COURT OF COMMON PLEAS OF FAYETTE COUNTY, PENNSYLVANIA

CIVIL DIVISION

JACK J. COLE,                     :

        Plaintiff,           :

        v.                :

LAURA M. COLE,            :

        Defendant.       :    No. 812 of 2015, G.D.

## RULE 1925(b) OPINION

LINDA R. CORDARO, J.

This Court entered an Order and Opinion in the above matter on July 1, 2015, granting Plaintiff's Petition for Special Relief to Confirm Settlement Agreement and to Stay Defendant's Claim for Spousal Support. Counsel for Appellant-Defendant filed an appeal on April 27, 2016, after which this Court directed Appellant-Defendant's counsel to file a Concise Statement of Matters Complained of on Appeal. The Concise Statement was subsequently filed on May 20, 2016.

This matter centers on the enforceability of an oral agreement between the parties as to the distribution of marital property. Appellant-Defendant's counsel insists on making the distinction that this agreement was in the form of a "post-nuptial agreement" rather than a "marital property settlement agreement." The Court does not find there to be any significance to this distinction, as either variation is subject to the same general contract principles. *Simeone v. Simeone*, 581 A.2d 162, 165 (Pa. 1990) ("Prenuptial agreements are contracts, and, as such, should be evaluated under the same criteria as are applicable to other types of contracts"); *Stoner v. Stoner*, 819 A.2d 529, 533 n. 5 (Pa.



2003) ("the principles applicable to antenuptial agreements are equally applicable to postnuptial agreements, although the circumstances may slightly differ"); *Luber v. Luber*, 614 A.2d 771, 773 (Pa. Super. Ct. 1992), citing *Lipschutz v. Lipschutz*, 571 A.2d 1046 (Pa. Super. Ct. 1990) ("A property settlement agreement is enforceable by utilizing the same rules of law used in determining the validity of contracts"); *See Also Horowitz v. Horowitz*, 600 A.2d 982 (Pa. Super. Ct. 1991). As such, the only relevant inquiry as far as this Court is concerned is whether an enforceable agreement was created between the parties.

The general framework of an enforceable agreement is surely well known to any legal professional. There must be a meeting of the minds, which requires the assent of both parties to the agreement. *City of Erie v. Fraternal Order of Police, Lodge 7*, 977 A.2d 3 (Pa. Commw. Ct. 2009); *Quiles v. Financial Exchange Co.*, 879 A.2d 281 (Pa. Super. Ct. 2005). The intent of the parties to be contractually bound is a question of fact to be determined by the factfinder. *Luber*, 614 A.2d at 773; *See Also Johnston v. Johnston*, 499 A.2d 1074 (Pa. Super. Ct. 1985). In determining the intent of the parties, it is their outward and objective manifestations of assent that matter, rather than their undisclosed and subjective intentions. As such, it is not necessary for the parties to come to a "true and actual meeting of the minds" to form a contract, so long as their manifested intent reasonably suggests their assent to the agreement. *Long v. Brown*, 582 A.2d 359 (Pa. Super. Ct. 1990); *Ingrassia Const. Co., Inc. v. Walsh*, 486 A.2d 478 (Pa. Super. Ct. 1984). Moreover, although preliminary negotiations do not constitute a contract, if the parties orally agree to all of the terms of a contract between them and mutually expect the imminent drafting of a written contract reflecting their previous understanding, that oral contract may be enforceable. *Trowbridge v. McCaigue* 992 A.2d 199 (Pa. Super. Ct.

2010); *Storms ex rel. Storms v. O'Malley*, 779 A.2d 548 (Pa. Super. Ct. 2001); *Kazanjian v. New England Petroleum Corp.*, 480 A.2d 1153 (Pa. Super. Ct. 1984).

Both parties refer only to *Luber* as legal authority in their oral arguments. In *Luber*, the Petitioner-Wife sought an order requiring Respondent-Husband to comply with the terms of an oral settlement agreement that was made before a Master, but never reduced to a writing. The agreement was enforced by both the trial court and Superior Court, as the record before the Master indicated an understanding and assent to the agreement on the part of both parties. *Id.*, at 773. Appellant-Defendant in the instant matter argues that *Luber* should be distinguished from this case, as the agreement here was not made before a Master, nor was it on the record. Further, Appellant-Defendant argues that there was not a full disclosure of the marital assets, which would be necessary if the agreement were characterized as a postnuptial agreement. This Court found no merit to Appellant-Defendant's argument, as the undisputed evidence of record demonstrated full disclosure through a two-page list of assets used by the parties and a calculation of assets made by Attorney Michelle Kelly, who was present for the settlement discussion. Additionally, there was a clear agreement upon value and distribution of those assets, and nothing in *Luber* persuaded this Court that the presence of a Master is determinative as to whether a contract was formed between the parties.

Lastly, Appellant-Defendant's Concise Statement also provides that the parties subsequently withdrew from the agreement, but the evidence of record does not support this conclusion. It was undisputed that Appellant-Defendant left a voicemail for Attorney Kelly that she no longer wished to sign the agreement, and later, Respondent-Plaintiff requested that she not draft the agreement. However, the language of that conversation is telling, as Attorney Kelly indicated on record that Mr. Cole "didn't want to pay for it if

it wasn't going to serve any purpose at this point." Petition for Special Relief Proceedings, p. 25 (June 11, 2015). Counsel for Respondent-Plaintiff further clarified this statement by asking Attorney Kelly if Mr. Cole indicated simply that he did not wish to pay for a written agreement, rather than that he had changed his mind, and Attorney Kelly confirmed that this was in fact the case. Proceedings, p.44. This Court finds that there most certainly was a meeting of the minds between the parties as to the distribution of marital assets by way of an oral agreement made before Attorney Michelle Kelly, and as such, that agreement is legally enforceable.

The Court respectfully submits the aforementioned reasoning for its order and opinion in this matter for the Superior Court's consideration.

BY THE COURT:

LINDA R. CORDARO, JUDGE

ATTEST:

Prothonotary

TRUE AND ATTESTED COPY

Prothonotary