# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Linda Vignetti, Pat Ramicone       :
and Computer Goo Roos, Inc.,        :
                    Appellants      :
                                    :
            v.                      :    No. 571 C.D. 2016
                                    :    Argued:  April 4, 2017
Borough of Munhall and              :
Munhall Sanitary Sewer              :
Municipal Authority                 :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                          FILED: June 9, 2017

Linda Vignetti, Pat Ramicone, and Computer Goo-Roos, Inc. (collectively, Property Owners) appeal an order of the Court of Common Pleas of Allegheny County (trial court) enforcing a settlement agreement between Property Owners and the Munhall Sanitary Sewer Municipal Authority (Sewer Authority). Property Owners contend the trial court erred in enforcing the settlement agreement because the parties never agreed to the terms of the settlement release. For the reasons that follow, we affirm the order of the trial court.

Property Owners own a building located in Munhall Borough, Allegheny County.[1]  Since August 9, 2007, the building's basement has experienced periodic flooding.  Property Owners engaged the Chiurazzi Law

---

[1] Linda Vignetti and Pat Ramicone are co-owners of Computer Goo-Roos, Inc., a retail establishment located on the first floor of the building.  Above the store are four apartments. Vignetti and Ramicone each occupy one apartment; the remaining two are leased.

Group to represent them. On July 10, 2009, Property Owners initiated an action against Munhall Borough (Borough), seeking equitable relief and damages for property loss and bodily injury alleged to have been caused by the Borough's negligent maintenance of its storm water and sewer systems. The complaint was later amended to add the Sewer Authority as a defendant.[2] Thereafter, the parties engaged in discovery for nearly three years; the case was listed for trial and continued numerous times.

On May 4, 2015, while the parties were still engaged in discovery, the Sewer Authority's insurance carrier sent an email to Property Owners' counsel, Adam Vahanian, Esquire, offering a settlement of $35,000. Vahanian Deposition, Ex. 1; R.R. 260a. The email stated the offer would be open for ten days. *Id.* On May 14, 2015, Vahanian responded by email that his clients "accept[ed] the Sewer Authority's $35,000 offer in full and final settlement of their claims." *Id.* Property Owners executed a settlement sheet setting forth how the settlement would be shared with counsel, for his fees. On September 3, 2015, Vahanian emailed Property Owners a copy of a release, which they refused to execute.

On October 23, 2015, the Sewer Authority petitioned the trial court to enforce the settlement. The trial court issued a rule to show cause why the settlement agreement should not be enforced. Property Owners offered their depositions and deposed Vahanian on the issue.

---

[2] The Sewer Authority was added as a defendant due to an agreement of sale between the Borough and the Sewer Authority by which the Borough transferred its liabilities in its sewer system to the Authority, but retained ownership and maintenance of the surrounding catch basins. Supplemental Reproduced Record at 3b-30b (S.R.R. __).

Property Owner Linda Vignetti testified that she told Vahanian that they were not willing to release Sewer Authority from making repairs to their building:

> [Counsel]: ... And as a result of the discussion that you had at your building with Mr. Vahanian, you made it clear to him that there would be no settlement unless the repairs were made by the Authority, is that correct?
>
> [Vignetti]: Absolutely. Absolutely. I would not – [a]nd I said, "If there is no repairs, there is no settlement."

Vignetti Deposition at 62-63; R.R. 340a-41a. Further, she testified that she was not informed that her agreement to settle for $35,000 would include a general release:

> [Counsel]: ... [P]rior to September 3, 2015, did Mr. Vahanian ever tell you that those terms were in there? And what I mean by "those terms" is that you would be releasing all rights that you would have against the Sewer Authority?
>
> [Vignetti]: No.
>
> [Counsel]: And did he tell you that they would not be performing the repairs that you wanted performed?
>
> [Vignetti]: No.

*Id.* at 25; R.R. 304a.

Property Owner Pat Ramicone also testified that Vahanian never communicated the terms of the release to Property Owners:

> [Counsel]: … [A]fter you read [the release], what reaction did you have to it?
>
> [Ramicone]: I'm not signing this.
>
> [Counsel]: Why?

3

[Ramicone]: It was – It was beyond – It was totally against any of our interests.

[Counsel]: Why is that?

[Ramicone]: Between the things we had discussed with [Vahanian], and things we assumed would still be available to us, we were signing away all our rights for the rest of our lives for [$]35,000.

[Counsel]: Did you – did you authorize [Vahanian] to enter into negotiations for that type of release on your behalf?

[Ramicone]: For those type of terms?

[Counsel]: Yes.

[Ramicone]: No.

[Counsel]: Did you ever agree to those terms?

[Ramicone]: I never knew about the terms.

Ramicone Deposition at 7-8; R.R. 378a-79a.

Vahanian's testimony painted a different picture. He conceded that although he may not have used the term "release," he believed his clients understood that by agreeing to a payment of $35,000, the Sewer Authority would be released from any additional liability. On cross-examination, Vahanian testified as follows:

[Counsel]: When you conveyed the settlement offer to your clients, [Property Owners,] whether it be the first time or at any time thereafter before it was accepted, did you tell your clients that the settlement offer was a payment of money in exchange for a full release of liability against the authority?

[Vahanian]: I probably didn't use those exact words. I have discussed settlement with my clients numerous times for months probably leading up to [Sewer Authority's] offer. I think they were aware of what it meant to settle a case; and I don't know if I used the terms, as you put them, $35,000 in

4

exchange for a full and final release against the [Sewer A]uthority; but the offer I conveyed was – *I would have said something along the lines of $35,000 to settle the case* with the understanding that based on numerous conversations with my client [sic] that they understood what that meant.

Vahanian Deposition at 14; R.R. 196a (emphasis added).

At his deposition, Vahanian also testified about an email exchange which led him to believe Property Owners understood that the settlement included a full release of the Sewer Authority's liability. On May 14, 2015, Property Owners sent an email to Vahanian that stated:

Our only contention is, if we do this; and we remain w[ith] just the [B]orough; what if the [B]orough shows it is the [S]ewer [A]uth[ority] after all from prior knowledge, etc.

*Id.*, Ex. 2; R.R. 261a. Vahanian testified as follows:

[Counsel]: Was [the May 14th email] – did that confirm your understanding that your clients knew if they accepted the [Sewer A]uthority's settlement offer of $35,000 that they could not pursue the [Sewer A]uthority any further?

[Vahanian]: That was my understanding.

*Id.* at 19; R.R. 201a. Later in the deposition, Vahanian reiterated that he believed Property Owners understood that a release was a part of the settlement terms:

[Counsel]: …[F]rom your numerous discussions with [Property Owners], did you understand that they understood if they accepted the [Sewer A]uthority's monetary offer of settlement, that the authority would be off the hook for everything they were claiming?

[Vahanian]: Absolutely without question.

*Id.* at 64; R.R. 246a.

5

After a review of the record, the trial court granted the Sewer Authority's petition to enforce the settlement agreement. Property Owners filed a motion for reconsideration, which the trial court denied.

On April 8, 2016, Property Owners appealed to this Court, and the Sewer Authority responded with a motion to quash the appeal. The motion states that the trial court's order to enforce the settlement was not a final appealable order. This Court ordered that the Sewer Authority's motion to quash be decided along with the appeal on the merits and directed the parties to address the appealability of the trial court's order in their principal briefs. The matter is now ready for disposition.

**Collateral Order**

We first address the appealability of the trial court's order enforcing settlement. As a general rule, only final orders are appealable. A final order is one that "disposes of all claims and of all parties" or is expressly "entered as a final order" by a trial court. Pa. R.A.P. 341(b). The purpose of limiting appeals to orders that are final is "to prevent piecemeal determinations and the consequent protraction of litigation." *Brophy v. Philadelphia Gas Works and Philadelphia Facilities Management Corporation*, 921 A.2d 80, 86 (Pa. Cmwlth. 2007).

The collateral order doctrine provides an exception to the general rule. It allows appeals of orders "which address claims of right 'separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause [of action] itself to require that appellate consideration be deferred until the whole case is adjudicated.'" *Rae v. Pennsylvania Funeral Directors Association*, 977 A.2d 1121, 1125 (Pa. 2009)

6

(quoting *Cohen v. Beneficial Industry Loan Corporation*, 337 U.S. 541, 546 (1949)).

The collateral order doctrine is codified in Rule 313 of the Pennsylvania Rules of Appellate Procedure, and it states:

> (a) General rule. An appeal may be taken as of right from a collateral order of an administrative agency or lower court.
>
> (b) Definition. A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa. R.A.P. 313. "Thus, an immediate appeal is permitted under the collateral order rule where: (1) the order is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such if review is postponed until final judgment, the claim will be irreparably lost." *Brophy*, 921 A.2d at 87. Because the collateral order rule is an exception to the general rule that only a final order may be appealed, it is interpreted narrowly. Each prong must be clearly satisfied for appellate jurisdiction to lie. Consistent with these principles, we consider whether the trial court's order to enforce a settlement is one that satisfies the three elements of a collateral order.

The first element requires the order in question to be separable from and collateral to the main cause of action. We have explained that "[w]here review of the order at issue does not implicate or affect the merits of the underlying dispute, it is separable from and collateral to the main cause of action." *Township of Worcester v. Office of Open Records*, 129 A.3d 44, 55 (Pa. Cmwlth. 2016).

Property Owners argue that the order meets this element because the underlying action concerns the negligent maintenance of Borough storm water runoff and sewer systems, whereas the order appealed involves enforcement of a purported settlement with the Sewer Authority. The Sewer Authority responds that the order is not separable from the main cause of action because the order to enforce settlement was based, at least in part, upon the lack of evidence to support Property Owners' case against the Sewer Authority and, thus, is inextricable from the merits of the underlying case.

We disagree with the Sewer Authority. A settlement agreement, by its nature, is not an adjudication of the merits of a claim, but an agreement to avoid litigation by compromise. A party may settle a case for reasons that have nothing to do with the merits of a case such as, for example, the cost of litigation. Accordingly, the order enforcing the settlement is separable from and collateral to the underlying claim of negligence.

A collateral order must also involve a right too important to be denied review. To satisfy this second prong, "it is not sufficient that the issue be important to the particular parties … [r]ather, the issue must involve rights deeply rooted in public policy going beyond the particular litigation at hand." *Spanier v. Freeh*, 95 A.3d 342, 346 (Pa. Super. 2014) (internal citations omitted).

Property owners assert the second prong is satisfied and, in support, direct us to *Geniviva v. Frisk*, 725 A.2d 1209 (Pa. 1999). In *Geniviva*, the trial court denied a motion to approve a settlement between the executor of an estate and the attorney who represented the executor. The attorney appealed the denial, and the Superior Court quashed the appeal *sua sponte* for the stated reason that the appeal was interlocutory and not collateral.

8

On further appeal, the Supreme Court analyzed the trial court's denial of the settlement under Rule 313 of the Pennsylvania Rules of Appellate Procedure. The attorney had argued that his right to avoid trial on account of a settlement agreement was sufficiently important under Rule 313 because it advanced the public policy favoring the voluntary resolution of disputes. The Supreme Court rejected this contention, noting that "[a]ny efficiencies gained in reduced trial litigation would be at the expense of increased appellate litigation." *Geniviva*, 725 A.2d at 1214. Ultimately, for other reasons, the Supreme Court affirmed the Superior Court's conclusion that the order did not involve a claim of sufficient import to satisfy the second requirement of a collateral order.

Property Owners assert *Geniviva* is distinguishable. *Geneviva* presented the opposite scenario, *i.e.*, the denial of a motion to enforce settlement and allowing litigation to continue. By contrast, the order in question will deprive Property Owners of their right to litigate against the Sewer Authority, which is an interest "deeply rooted in public policy." *Id.* The Sewer Authority responds that orders "deeply rooted in public policy" are those that implicate constitutional rights. *See, e.g., Melvin v. Doe*, 836 A.2d 42, 50 (Pa. 2003) (holding that free speech is a right too important to be denied review). There is no such claim here.

We disagree with the Sewer Authority's overly narrow view of the second prong. The Pennsylvania Constitution provides that "[a]ll courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law…." PA. CONST. art. 1, §11. Forfeiture of the right to pursue a legal claim is of sufficient import to warrant immediate appellate review.

9

Finally, a collateral order must involve a claim that will be irreparably lost if review is postponed until final judgment. "[A]n order is not immediately appealable unless it can be said that denial of immediate review would render impossible any review whatsoever of the appellant's claim." *Beltran v. Piersody*, 748 A.2d 715, 718 (Pa. Super. 2000).

Property Owners contend that if they cannot immediately appeal the order enforcing settlement, they will lose their right to proceed against the Sewer Authority. In support, they cite to *National Recovery Systems v. Perlman*, 533 A.2d 152 (Pa. Super. 1987). In *National Recovery*, the trial court denied a motion to enforce settlement where the parties disputed the validity of the settlement agreement. The Superior Court quashed the appeal, finding that the order was not collateral because the appellant's claim was not irreparably lost. The Superior Court acknowledged that quashing the appeal had the practical effect of requiring appellant to proceed to trial; however, the appellant's right to the benefit of the purported settlement agreement was not wholly lost. The Superior Court explained that

> [a]ppellant is free to raise the issue of the validity of the settlement agreement on appeal from the judgment on the underlying claim, or in a collateral action. If the settlement agreement is determined to be valid, appellant will have the right to recover from appellee the damages caused by appellee's breach of the agreement, including the time, expense, and other burdens of proceeding to trial.

*Id.* at 153.

Again, *National Recovery* presents the opposite scenario, *i.e.*, the refusal to enforce a settlement agreement. Property Owners argue that *National Recovery* supports their position. Under the trial court's order, they forfeit their

right to pursue claims against the Sewer Authority while they litigate against the Borough.

The Sewer Authority responds that postponing review of the trial court's order to enforce settlement will not be detrimental to Property Owners. Their litigation against the Borough could result in a full award of all of Property Owners' alleged damages; therefore, they would have no need to pursue their appeal of the trial court's enforcement of the settlement.

If review is denied, Property Owners' right to pursue the Sewer Authority and the Borough as joint tortfeasors in a single proceeding will be lost. The trial court's order granting enforcement of settlement can be appealed after the disposition of Property Owners' claims against the Borough.[3] However, they will lose the opportunity to pursue their negligence claims against the Sewer Authority and the Borough in a single proceeding.[4] In a case where there is an issue as to which of two defendants is liable, separating the claims to be tried against each defendant individually could be detrimental to Property Owners' case.

Although close, we conclude the prerequisites for an appealable collateral order under Pa. R.A.P. 313 are met and deny the Sewer Authority's motion to quash. Accordingly, we turn to the merits of Property Owners' appeal.

---

[3] *See Rush v. Philadelphia Newspapers, Inc.*, 732 A.2d 648, 651 (Pa. Super. 1999) (noting that when a trial court does not certify an order granting summary judgment in accordance with Pa. R.A.P. 341(c), "an appellant must wait to file his appeal until after an order disposing of all claims or all parties has been issued.").

[4] This is a factor a trial court may consider in deciding whether to certify an order as final under Pa. R.A.P. 341(c). *See* Pa. R.A.P. 341; *Williams v. Anderson Equipment Company*, (Pa. Super., No. 1454 W.D.A. 2013, filed October 7, 2014) (unreported). Property Owners did not petition the trial court for certification.

11

**Petition to Enforce**

On appeal,[5] Property Owners assert that the trial court erred in granting the Sewer Authority's petition to enforce settlement because there was no "meeting of the minds" on the terms of the release. The trial court, in granting the Sewer Authority's petition to enforce settlement, stated as follows:

> The record consists of the Petition, an Answer, and three depositions (Linda Vignetti, Pat Ramicone, and Adam Vahanian (initial counsel for [Property Owners] in the underlying action)). I find that the record supports a finding that the claims against the [Sewer Authority] were settled for $35,000. An email dated May 14, 2015 from the [P]roperty [O]wners to Attorney Vahanian states, "[w]e trust your gut, (no matter how little it is). We are willing to go forth with your recommendation regarding the sewer auth. (kisses and admiration from you are okay at a later time [])." Vahanian Dep. Ex. 2. Thereafter, Linda Vignetti and Pat Ramicone signed a Settlement Sheet showing the settlement amount (as to [Sewer Authority] only) of $35,000. The Settlement Sheet includes a statement that [Property Owners] acknowledged the above settlement terms. Vahanian Dep. Ex. 3.

Trial Court Memorandum and Order, 1/27/2016, at 1; R.R. 104a.

Settlement agreements are enforced according to the principles of contract law. *Pulcinello v. Consolidated Rail Corporation*, 784 A.2d 122, 124 (Pa. Super. 2001). The *sine qua non* of an enforceable contract is a meeting of the

---

[5] "When reviewing a trial court's decision to enforce a settlement agreement, our scope of review is plenary as to questions of law, and we are free to draw our own inferences and reach our own conclusions from the facts as found by the court.... However, we are only bound by the trial court's findings of fact which are supported by competent evidence.... The prevailing party is entitled to have evidence viewed in the light most favorable to its position.... Thus, we will only overturn the trial court's decision when the factual findings of the court are against the weight of the evidence or its legal conclusions are erroneous...." *Bennett v. Juzelenos*, 791 A.2d 403, 406 (Pa. Super. 2002) (citations omitted).

minds. This means there must be a "concurrence of both parties to the agreement [and] … there must be a meeting of the minds on all terms of the contract." *City of Erie v. Fraternal Order of Police, Lodge 7*, 977 A.2d 3, 12 (Pa. Cmwlth. 2009) (citation omitted).

Property Owners acknowledge that they authorized settlement in the amount of $35,000 for *damages* based on their claims against the Sewer Authority.[6] However, they contend that they did not agree to a general release of claims against the Sewer Authority, including their right to pursue claims for repairs and personal injury. The Sewer Authority responds that Property Owners understood that the $35,000 settlement would release the Sewer Authority from all claims arising out of the initial complaint. That Property Owners are dissatisfied with their legal representation does not invalidate the settlement agreement.

The pertinent question is whether the Settlement Sheet is complete and released the Sewer Authority from any liability. The language of the release states, in pertinent part:

> In consideration of the payment set forth above, [Property Owners] hereby completely release[ ] and forever discharge[ ] [Sewer Authority] from any and all past, present and future claims, demands, obligations, actions, causes of action, wrongful death claims, rights, damages, costs, losses of services, expenses and compensation of any nature whatsoever, whether based on a tort, contract or other theory of recovery,

---

[6] Following several discussions with Vahanian regarding the Sewer Authority's $35,000 settlement offer, Property Owners granted express authority to Vahanian in an email dated May 14, 2015, with the subject "sewer auth[ority] offer." Therein, Property Owners wrote:

> We trust your gut, (no matter how little it is). We are willing to go forth with your recommendation regarding the sewer auth. (kisses and admiration from you are okay at a later time []).

Vahanian Dep. Ex. 2; R.R. 261a.

13

> *which the [Property Owners] now ha[ve], or which may hereafter accrue or otherwise be acquired, on account of, or may in any way grow out of, or which are the subject of the Complaint*, Amended Complaint, and all related pleadings, including, without limitation, any and all known or unknown claims for bodily and personal injuries to [Property Owners], or any future claim of [Property Owners'] representatives or heirs, which have resulted or may result from the alleged acts or omissions of the [Sewer Authority] as set forth in the Complaint and any amendment thereto or thereof in the Civil Action.

Release Agreement at 1; R.R. 63a (emphasis added). The Release Agreement is clear, but it has not been signed by Property Owners.

Vahanian communicated with Property Owners by email. In one email, Property Owners seemed to understand the risk of settling with one of the two defendants. Their email stated:

> Our only contention is, if we do this; *and we remain w[ith] just the [B]orough*; what if the [B]orough shows it is the [S]ewer [A]uth[ority] after all from prior knowledge, etc.

Vahanian Deposition, Ex. 2; R.R. 261a (emphasis added). Nevertheless, later in the same email, Property Owners granted Vahanian express authority to settle based on his legal recommendation. *Id*.

Subsequently, on June 5, 2015, Property Owners executed a settlement sheet setting forth the final payment amounts and settlement terms. Vahanian Deposition, Ex. 3; R.R. 262a.[7] The record also shows that Vahanian

---

[7] Property Owners subsequently executed an amended settlement sheet on July 14, 2015. Vahanian Deposition, Ex. 4; R.R. 263a-64a. The terms of the settlement between Property Owners and the Sewer Authority remained the same. The subsequent settlement sheet merely removed language stating Property Owners were pleased with the services they received from counsel who represented them prior to Vahanian.

14

informed Property Owners that the language of the release was being negotiated and would be included in the settlement with the Sewer Authority. This is evidenced in an email from Property Owners to Vahanian dated June 17, 2015. Therein, Property Owners wrote:

> *I know you spoke of a multiple page disclaimer* (?) from [Sewer Authority], would you please forward a copy for us to review. (is this the hold back for payment to us?)

*Id.,* Ex. 7; R.R. 272a (emphasis added). This establishes that at some date prior to June 17, 2015, Vahanian relayed to Property Owners that a multiple page disclaimer, *i.e.,* release, would be forthcoming as a term of the settlement agreement.

This Court will overturn a trial court's decision enforcing settlement only where the factual findings of the court are against the weight of the evidence. *Bennett*, 791 A.2d at 406. The deposition testimony of Vahanian and accompanying email evidence support the trial court's finding that Property Owners understood that the settlement released the Sewer Authority from further liability in the matter. We cannot say, therefore, that the evidence does not support the trial court's order.

## Conclusion

For the reasons set forth above, we affirm the trial court's order enforcing settlement.

_____
MARY HANNAH LEAVITT, President Judge

Judge McCullough did not participate in the decision in this case.

15

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Linda Vignetti, Pat Ramicone   :
and Computer Goo Roos, Inc.,   :
                 Appellants   :
  :
           v.   :   No. 571 C.D. 2016
  :
Borough of Munhall and   :
Munhall Sanitary Sewer   :
Municipal Authority   :

## <u>O R D E R</u>

AND NOW, this 9th day of June, 2017, the Motion to Quash Appeal filed by the Munhall Sanitary Sewer Authority in the above-captioned matter is hereby DENIED. The order of the Court of Common Pleas of Allegheny County dated March 18, 2016 is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge