**Allan W. LUGG Jr., Appellee**

**v.**

**Sarah A. LUGG, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 24, 2013.

Filed April 1, 2013.

Lee H. Roberts, Lock Haven, for appellant.

Stuart L. Hall, Lock Haven, for appellee.

BEFORE: SHOGAN, J., LAZARUS and OTT, JJ.

OPINION BY OTT, J.

Sarah A. Lugg appeals from the order entered on November 4, 2011 in the Court of Common Pleas of Clinton County denying her counter-claim to set aside the December 30, 2010 post-nuptial agreement between her and Appellee, Allan W. Lugg, Jr. Lugg claims the trial court erred in enforcing the agreement because, (1) there was a lack of disclosure of assets on the part of Allan Lugg, Jr., (2) the agreement was signed under duress, and (3) the agreement is unconscionable. After a thorough review of the submissions by the parties, official record, and relevant law, we affirm.[1]

The Honorable Pamela A. Ruest set forth the factual and procedural history in her Pa.R.A.P. 1925(a) opinion:

Plaintiff (hereinafter "Husband") and Defendant (hereinafter "Wife") were married on October 11, 1997, and are the parents of three minor children. In or about August of 2010, in contemplation of divorce, Wife signed an agreement to purchase a house. Thereafter, Husband and Wife began negotiating terms of a postnuptial agreement. On or about October 3, 2010, Wife prepared a letter to Husband in which Wife proposed a number of requests and stated, *inter alia,* "In return, I will not seek

---

1. "The determination of marital property rights through prenuptial, postnuptial and settlement agreements has long been permitted, and even encouraged." *Sabad [v. Fessenden],* 825 A.2d [682,] 686 [(Pa.Super.2003)] (quoting *Laudig v. Laudig,* 425 Pa.Super. 228, 624 A.2d 651, 653 (1993)). Both prenuptial and post-nuptial agreements are contracts and are governed by contract law. *Laudig, supra.* Moreover, a court's order upholding the agreement in divorce proceedings is subject to an abuse of discretion or error of law standard of review. *See Busch v. Busch,* 732 A.2d 1274, 1276 (Pa.Super.1999), *appeal denied,* 563 Pa. 681, 760 A.2d 850 (2000) (citing *Laudig, supra*). An abuse of discretion is not lightly found, as it requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures. *Paulone v. Paulone,* 437 Pa.Super. 130, 649 A.2d 691 (1994). We will not usurp the trial court's factfinding function. *Laudig, supra.*

*Paroly v. Paroly,* 876 A.2d 1061, 1063 (Pa.Super.2005).

Full Disclosure or Child Support." [2] The parties handwrote additional negotiations on the October 3rd letter and, on October 24, 2010, Wife prepared a second letter in which Wife again stated she would not seek full disclosure or child support.

On November 3, 2010, counsel for Husband, Stuart L. Hall, Esquire, prepared a draft of the postnuptial agreement. Husband gave Wife a copy of the draft, which Wife took to her attorney, Lee H. Roberts, Esquire. Upon review of the proposed agreement, Attorney Roberts sent a letter to Attorney Hall on November 12, 2010, in which Attorney Roberts criticized the agreement and stated all negotiations with Wife should be made through him, Wife would need several months to settle into her new home before negotiations could begin, and an agreement should not be entered until after negotiations. Although Attorney Hall informed Husband of the contents of Attorney Roberts' letter, Husband continually and persistently contacted Wife to request she sign the agreement. Wife expressed resistance to entering the agreement but continued to negotiate directly with Husband and, on or about November 16, 2010, submitted written proposed changes to Husband. A final agreement was prepared by employees of the law firm of Lugg & Lugg, Husband's father and brother's law firm. Husband and Wife arranged to meet on December 30, 2010, to execute the final agreement, although the parties disagree over whether the meeting was intended to take place in Wife's home or the home of Mary Stringfellow, a long-time secretary of Lugg & Lugg. On December 30, 2010, Wife and her friend, Maryann Winklemann, were present at Wife's home when Husband and Mary Stringfellow arrived to execute the agreement. Prior to the arrival of Husband and Ms. Stringfellow, Wife informed Ms. Winklemann she had decided not to sign the agreement. Nonetheless, after spending approximately one and one half hours reviewing the agreement with Husband, Wife and Husband signed the agreement. Wife additionally signed a deed to the parties' marital residence, after Ms. Stringfellow informed Wife the document was a deed to the residence. Ms. Winklemann witnessed the execution and the agreement was notarized by Ms. Stringfellow.

After executing the postnuptial agreement, Wife and Husband went to a car dealer and transferred the titles of two vehicles into Wife's name. Husband gave wife a check for $10,000.00, which Wife subsequently cashed. In January, 2011, Husband filed a Complaint in Divorce and, after service was rejected by Attorney Roberts, Husband served the Complaint on Wife. Husband then gave Wife a second check for $10,000.00, in accordance with the terms of the agreement, which Wife accepted and cashed. In May of 2011, Wife filed for child support. Husband subsequently filed the present Motion to Enforce Post–Nuptial Agreement and for Contempt and Award of Counsel Fees on the ground Wife has breached the parties' postnuptial agreement by failing to sign documents necessary to finalize the parties' divorce. Wife filed a counter-motion to Husband's motion requesting the Court invalidate the parties' agreement and order Husband to execute a deed re-conveying the marital residence to Husband and Wife.

Trial Court Opinion, 11/1/11 at 1–3.

 Lugg's first claim is that the trial court erred in failing to invalidate the

**2.** The issue of child support is not before us. We were informed at argument that any child support issues have been resolved and are addressed by separate order.

agreement due to lack of full disclosure. This argument is based on considerable case law that provides full and fair economic disclosure is mandatory in order to uphold either a pre- or post-nuptial agreement. See, *Stoner v. Stoner*, 572 Pa. 665, 819 A.2d 529 (2003); *Simeone v. Simeone*, 525 Pa. 392, 581 A.2d 162 (1990). Further, Lugg argues that she cannot waive a right without knowing what is being waived. Therefore, there can be no effective waiver of economic disclosure because one would never know what was being waived. Lugg completes her argument by asserting where there was no economic disclosure, the burden should shift to the person seeking to enforce the agreement to demonstrate the agreement is fair and reasonable. *See* Appellant's brief at 24–25.

 We believe these arguments are unavailing. Initially, we note that post-nuptial agreements are to be reviewed under the same principles as pre-nuptial. *See Stoner, supra; In re Ratony's Estate*, 443 Pa. 454, 277 A.2d 791 (1971). Case law further demonstrates that a pre-nuptial agreement is a contract and, therefore, is to be evaluated under the same criteria as other contracts; absent fraud, misrepresentation or duress, spouses should be held to the terms of their agreements. *See Simeone*, 581 A.2d at 165. Commenting on *Simeone*, our Supreme Court in *Stoner* stated,

We expressly rejected an approach which would allow the court to inquire into the reasonableness of the bargain, or the parties understanding of the rights they were relinquishing. We decline to resurrect to paternalistic approaches to evaluating marriage contracts by requiring Husband to explain to Wife the statutory rights that she may be surrendering. Such an approach assumes that Wife lacks the intelligence or ability to protect her own rights. Instead, we endorse the parties' rights to freely contract, and thus decline to impose the additional inquiry as to whether the parties were sufficiently advised of their statutory rights.

*Stoner*, 819 A.2d at 533.[3]

It is evident our Supreme Court has already rejected Lugg's proposed standard that this court delve into whether the agreement was fair and reasonable, absent any showing of fraud, misrepresentation or duress. Similarly, we must reject the assertion that economic disclosure cannot be waived because the party waiving disclosure does not know the extent of what is being waived. We note, too, that the legislature adopted the *Simeone* approach in 23 Pa.C.S. § 3106, by allowing, in relevant part, a party to waive economic disclosure in terms of a prenuptial agreement, as long as the waiver is voluntary and in writing. *See* 23 Pa.C.S. § 3106(a)(2)(ii) and comment.[4] There are no statutory

---

3. In *Stoner*, the wife sought to avoid the application of a post-nuptial agreement because although the agreement provided full disclosure, it did not advise wife of her statutory rights to equitable distribution, alimony or alimony *pendente lite*. Nonetheless, wife was held to terms of the agreement.

4. In relevant part, Section 3106, addressing Premarital agreements states:

 (a) The burden of proof to set aside a premarital agreement shall be upon the party alleging the agreement to be unenforceable.

A premarital agree shall not be enforceable if the party seeking to set aside the agreement proves, by clear and convincing evidence, that:

(2) the party, before execution of the agreement:

 (ii) did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided.

regulations addressing post-nuptial agreements. Because pre- and post-nuptial agreements are to be similarly viewed, and because waiver of economic disclosure is allowed in a pre-nuptial agreement, absent a compelling reason to treat pre- and post-nuptial agreements differently for this purpose, we believe full economic disclosure is waiveable in a post-nuptial agreement.[5]

Concluding there is no prohibition against the waiver of economic disclosure, we agree with the trial court that as long as there is no showing of fraud, misrepresentation or duress, the waiver is valid and enforceable. Here, the trial court stated,

> Accordingly, where a spouse enters an agreement mistakenly believing they are sufficiently informed of the other party's financial resources, the spouse may assert a lack of disclosure or misrepresentation of assets constituted fraud or misrepresentation in the inducement.

> In the present matter, Wife argues that due to the lack of full disclosure, "an agreement based on this fraud and misrepresentation" should be invalidated. Wife does not articulate, however, how the lack of disclosure could constitute fraud or misrepresentation when Wife was aware there was no such disclosure. In expressly waiving her right to full disclosure, Wife specifically acknowledged Husband had not engaged in full disclosure. Where there is no allegation Husband misrepresented his financial resources and, at the time Wife signed the agreement, Wife was aware Husband had not disclosed his resources, the Court cannot find Wife was induced to

enter the agreement through fraud or misrepresentation.

Trial Court Opinion, at 5–6.

We find there to be no abuse of discretion or error of law in this analysis.

■ Lugg next claims the post-nuptial agreement should have been set aside because she signed the agreement under duress. This duress consisted of daily pressure to sign the agreement and on the day the agreement was signed, "one and one-half hours of continual pressure and negotiations" caused Lugg to "cave in" and sign the agreement. Also, Lugg claims there was an "actual or tacit conspiracy" between Husband, Al Lugg, Sr. (husband's father and an attorney), Stuart L. Hall, Esq. (Husband's attorney), and Mary Stringfellow (longtime paralegal for Lugg, Sr.) to get Lugg to sign the agreement without review or contact by her counsel.

These arguments fail. Regarding duress, the trial court has correctly noted duress is defined as:

> That degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness.... Moreover, in the absence of threats of actual harm there can be no duress where the contracting party is free to consult with counsel.

*Adams v. Adams,* 414 Pa.Super. 634, 607 A.2d 1116, 1119 (1992).

We are again compelled to agree with the trial court's analysis. Daily badgering

---

The Comment states: "Subsection (a) is modeled after section 6(a) of the Uniform Premarital Agreement Act and encompasses the approach of *Simeone*."
23 Pa.C.S. § 3106 and Comment.

**5.** Other than noting that Lugg was under stress from, in part, voluntarily moving into

her own home, there has been no explanation why a postnuptial agreement should be treated any differently from a pre-nuptial agreement. This argument appears to invite a return to the "paternalistic" approach rejected by our Supreme Court.

and one and one-half hours of "pressure and negotiations" does not rise to the level of coercion necessary to find duress. Lugg never claimed she was subject to any level of force or threat of force. Her claim of a conspiracy, actual or tacit, to keep her from her attorney is belied by the fact she contacted her attorney. There is nothing in the record to show Husband threatened her in any way to prevent her from contacting her lawyer. The note from Husband to Lugg scheduling the meeting to sign the agreement contemplates Lugg showing the proposed agreement to her lawyer.[6] Lugg's claim of a conspiracy to deprive her of counsel is devoid of substance. There was no duress.

Lugg's claim of legal misconduct is also groundless. Lugg cites Pennsylvania Rules of Professional Conduct 4.2 and 5.3 in an effort to show misconduct. Rule 4.2 states a lawyer may not communicate with a client that lawyer knows to be represented without proper authorization. Rule 5.3 requires a lawyer responsible for the conduct of a non-layer to ensure the employee follows the rules of professional conduct. Lugg claims Stringfellow's participation in signing the agreement violated the Rules of Professional Conduct. There are multiple problems with this argument.

Husband's counsel, Anthony Hall, was contacted by Lugg's counsel and told not to contact Lugg directly. Hall did not. Stringfellow is not employed by Hall and Hall has no supervisory responsibility over Stringfellow. While Lugg claimed "it strains one's imagination", *see* Appellant's Brief at 30, to believe Husband's father and brother (both lawyers) took no part in the negotiations, Lugg has presented no evidence to support the argument. The record has no proof that Lugg & Lugg had

any responsibility in the matter or even any particular knowledge of the matter. The evidence shows that the firm of Lugg & Lugg allowed Stringfellow and an unnamed secretary to act as scriveners, typing up the agreement in its various forms, and permitted Stringfellow, over her lunch hour, to act as notary. There is no evidence that there were any ethical breaches. Finally, even assuming the validity of this claim, Lugg has presented no legal authority that her remedy would be to renounce the agreement. Therefore, this claim must also fail.

Because the official record supports the trial court's determinations, we find no abuse of discretion and because there are no errors of law, we affirm the order granting Husband's motion to enforce the postnuptial agreement, denying Husband's motion for contempt and attorney's fees, and denying Lugg's counter-motion to declare post-nuptial agreement invalid.

Order affirmed.

---

**6.** "If you take to Lee [Roberts, Lugg's attorney] save original draft I'll need to make 4–copies. Lee will say the same thing he did before and charge. The agreement has not changed that much from the one he looked at." Defense Exhibit 1.