J-A03024-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| AHAB III, INC. AND GINGER KATZENMOYER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANCESCO SATIRO | : | |
| | : | No. 2249 EDA 2017 |
| Appellant | : | |

Appeal from the Order Dated July 13, 2017
In the Court of Common Pleas of Chester County Civil Division at No(s):
2013-07561

BEFORE:   GANTMAN, P.J., McLAUGHLIN, J., and PLATT*, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED MARCH 28, 2018**

Appellant Francesco Satiro appeals from the order[1] of the trial court

granting the motion of Appellees, Ahab III, Inc. and Ginger Katzenmoyer, to

enforce a settlement. Also before the Court is Appellees' request to award

_____

* Retired Senior Judge assigned to the Superior Court.

[1] Satiro filed a first Notice of Appeal on July 13, 2017, purporting to appeal from the orders entered June 14, 2017, and July 13, 2017. He later filed a second Notice of Appeal on August 3, 2017, following the court's denial of his Motion for Reconsideration, purporting to appeal from the orders entered March 10, 2017, July 13, 2017, and July 14, 2017. We deem the orders dated July 13, 2017 (docketed July 14, 2017) – which granted Appellees' Motion for Enforcement of Settlement, denied Satiro's Petition to Set Aside the Settlement, and directed the Prothonotary to mark the case as "settled" and remove it from the trial list – to be the final, immediately appealable orders. **_See generally_** Pa.R.A.P. 341. For simplicity, we refer to the two orders dated July 13, 2017 as a single order.

counsel fees in connection with this appeal. We affirm the order of the trial court and deny Appellees' request for counsel fees.

In 2011, the parties entered into an Installment Sale Agreement under which Appellees were to sell four parcels of real estate, including a restaurant known as Harpoon Louie's, to Satiro. In 2013, Appellees filed suit against Satiro for breach of contract. After several years of "contentious and protracted" discovery,[2] the trial court entered several orders indicating that the case would be listed for trial;[3] the last of these was an order entered on March 10, 2017, stating that the case "shall be included on the first trial list published on or after July 1, 2017." Order, 3/10/17. Approximately three months later, on June 13, 2017, the court issued an order setting a slightly earlier trial date of June 26, 2017.

On the first day of trial, the parties entered into a settlement. Negotiations between the parties and their attorneys "took place over more than ninety minutes in the courtroom and hallway." Trial Ct. Op. at 3. The terms of the settlement were memorialized on the record, with Satiro's express agreement, as follows:

> THE COURT:      Please be seated. Okay. Who wants to put it on the record? Mr. Thomas, do you want to do it?
>
> MR. THOMAS [(Appellees' attorney)]: I do, but I'd like the defendant to be here when I did it.

---

[2] Trial Court Opinion, filed Aug. 17, 2017, at 1.

[3] **See, e.g.**, Orders filed Oct. 12, 2016 and Nov. 29, 2016.

- 2 -

THE COURT:      I guess that would be helpful.

Okay. Whenever you're ready.

MR. THOMAS:      Good afternoon, Your Honor. Leno Thomas on behalf of the plaintiff, Ginger Katzenmoyer. Opposing counsel, Mr. Bambrick, and I have negotiated a settlement in this matter.

The settlement is as follows: Mr. Satiro is to issue a certified cashier[']s check in the amount of $50,000 payable to Ginger Katzenmoyer and her attorneys, mailed to my office at 317 Swede Street, Norristown, Pennsylvania, 19401 dated no later than tomorrow. Additionally, another $50,000 in 120 days from today, same conditions: Certified bank check or cashier[']s check payable to Ginger Katzenmoyer and her attorneys, mailed to my office at 317 Swede Street, Norristown, Pa 19401.

Is that your understanding, sir?

MR. BAMBRICK: That's my understanding. Are you in agreement, Mr. Satiro?

MR. SATIRO:      If I can't get an extension, I don't have a choice.

MR. BAMBRICK:  Well, is it a yes or no?

THE COURT:      Is it a yes or no? Do we have a settlement or don't we?

MR. SATIRO:      Yes, Your Honor.

THE COURT:      Thank you.

MR. SATIRO:      If I can't get an –

THE COURT:      I said either yes or no. You said yes?

MR. SATIRO:      Yes, Your Honor.

THE COURT:      Anything further, Mr. Thomas?

MR. THOMAS:      Nothing, Your Honor. Except that in the event that he does not pay we'd respectfully ask for a motion to –

THE COURT:     Well, you can file a motion to [en]force the settlement if he does not comply, but I want you to file a praecipe to settle, discontinue and end this case.

MR. THOMAS:     I will. Can I file that after I get the first 50,000?

THE COURT:     Yes. But I don't want you to wait 120 days to do it.

MR. THOMAS:     I will not, Your Honor. After I get the first 50,000, I'll file it, and if he doesn't pay the other 50,000 –

THE COURT:     Then you can file a motion.

MR. THOMAS:     Yes, Your Honor.

THE COURT:     Very well. Thank you very much. We're adjourned.

N.T., 6/26/17, at 2-4.

Appellees filed a Motion for Enforcement of Settlement on June 29, 2017. In the Motion, Appellees stated that Satiro had not paid $50,000 by June 27, 2017, as was agreed in the settlement. **See** Mot. for Enforcement of Settlement, filed July 3, 2017, at 2 (unpaginated).[4] Instead, on the day payment was due, Satiro allegedly advised them that his bank was preventing him from issuing a check until the next day; the following day, Satiro allegedly told Appellees that his wife had drained their joint bank account at his direction and had put all of their money into her own account. **Id.**

The trial court thereafter issued a Rule to Show Cause, requesting that Satiro respond as to why the settlement should not be enforced. Satiro filed a

_____

[4] The motion was time-stamped as received by the Prothonotary on July 3, 2017.

*pro se* response to the Motion for Enforcement of Settlement on June 30, 2017, as well as a *pro se* Petition to Set Aside the Settlement.[5] In these filings, Satiro alleged that his attorney did not inform him that the trial date had been set for June 26 (*i.e.*, on a date prior to the anticipated July listing) until June 22. **See** Pet. to Set Aside Settlement, filed June 30, 2017, at ¶ 14. Satiro claimed that on the first day of trial, his attorney told him that he (the attorney) was not prepared for trial, did not have his complete file with him, and no witnesses "were called" by either party to appear for trial, "[m]aking a trial impossible." **See id.** at ¶ 17; Reply to Mot. for Enforcement of Settlement, filed June 30, 2017, at ¶ 2-3. Bambrick allegedly told Satiro that trial would start immediately if Satiro did not accept the settlement agreement; that if Satiro elected to proceed to trial, he would lose; and that he stood to lose $2.2 million. Satiro claimed that he "was literally dragged into

_____

[5] Satiro titled the latter petition, "Rule to Show Cause," but the trial court concluded that the filing was "in the nature of a petition to set aside the parties' settlement agreement." **See** Order, filed July 14, 2017. We refer to this filing in the same manner as the trial court.

At the time that he filed these *pro se* documents, Satiro was still represented by his trial counsel, Attorney Bambrick. Although Attorney Bambrick had filed for leave to withdraw two days earlier, on June 28, 2017, the court had not ruled on this request. (Attorney Bambrick later filed a Praecipe to Withdraw his Motion to Withdraw on July 17, 2017.) Satiro's appellate counsel, Ronald F. Brien, did not begin representing Satiro until July 14, 2017. In its Rule 1925(a) opinion, the trial court addresses Satiro's representation at the time of his *pro se* filings in a footnote, stating, "[Satiro] continues to be represented by counsel; however, he files documents that he has written. Since such hybrid representation is not prohibited, we have entertained his filings." Trial Ct. Op. at 2 n.3. Appellees have not challenged the propriety of the trial court's consideration of Satiro's *pro se* filings.

- 5 -

the courtroom," and was not sworn in before the above-quoted discussion, which took place on the record. *See* Pet. to Set Aside Settlement at ¶ 18. Satiro stated that he had requested a continuance from the court, but it was denied. Ultimately, Satiro claimed that the settlement agreement was made "without his consent and under duress." *Id.* at ¶ 25, 27. He therefore requested that the trial court void the settlement agreement.

The trial court held a "short proceeding" on July 13, 2017, *see* Trial Ct. Op. at 2, at which Satiro was represented by new counsel; the certified record does not reflect what transpired on that date. The court thereafter granted Appellees' Motion to Enforce the Settlement and denied Satiro's Petition to Set Aside Settlement. The court also ordered the Prothonotary to mark the case "settled" on the docket and remove it from the trial list. *Id.* Satiro filed a Motion for Reconsideration, which the court denied on July 31, 2017.

Satiro appealed, and presents the following issues for our review:

1. Did the trial court abuse its discretion by not granting Defendant's request for a continuance on June 26, 2017?

2. Did the trial court abuse its discretion, or commit legal error, in granting Plaintiff's Motion to Enforce Settlement Agreement, in the Order dated July 13, 2017?

Satiro's Br. at 2-3.

Appellees argue that the trial court should be affirmed, and request that we "award the Appellees attorneys' fees and costs associated with the appeal, and such other relief that the court deems just and proper." Appellees' Br. at 8, 9, 30. Appellees repeated this request at oral argument.

We begin with Satiro's second issue, in which he claims that the trial court erred or abused its discretion in enforcing the settlement. "The enforceability of settlement agreements is determined according to principles of contract law." *Mastroni-Mucker v. Allstate Ins. Co.*, 976 A.2d 510, 517-18 (Pa.Super. 2009). Contract interpretation is a question of law, and therefore our standard of review is *de novo* and our scope is plenary. *Id.* at 518. "With respect to factual conclusions, we may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record." *Id.* "A settlement will not be set aside absent a clear showing of fraud, duress or mutual mistake." *Rago v. Nace*, 460 A.2d 337, 339 (Pa.Super. 1983) (citation omitted).

Satiro argues that the trial court should not have enforced the settlement because he was under duress at the time he agreed to settle. *See* Satiro's Br. at 13. According to Satiro, any person would have felt duress when faced with the "predicament" of going immediately to trial, unprepared. *Id.* at 17. Satiro argues that the transcript evinces that both his lawyer and the trial court pressured him to agree to the settlement. *Id.* at 13, 17. Satiro contends that when he requested that the court set aside the settlement on the basis of duress, the court should have held an evidentiary hearing. *Id.* at 12, 17 (citing *Felix v. Giuseppe Kitchens & Baths, Inc.*, 848 A.2d 943 (Pa.Super. 2004) and *Rago*, 460 A.2d at 337). Satiro also argues that he manifested an intent *not* to consent to the agreement, through his verbal protestations on

the transcript, the fact that he did not comply with the settlement agreement afterwards, and the fact that he has taken this appeal. **See** Satiro's Br. at 13-16.[6]

We reject Satiro's claim of duress. "We have long defined duress as that degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness." **Adams v. Adams**, 848 A.2d 991, 993 (Pa.Super. 2004) (quotation marks and citations omitted). Moreover, "A party who has reasonable opportunity to consult with counsel before entering a contract cannot later invalidate it by claiming duress." **Id.**

For example, where an ex-wife petitioned the court to set aside her post-nuptial agreement with her ex-husband, we affirmed the trial court's denial of her request because the ex-wife was never subject to force or threat of force,

---

[6] In addition to the above, Satiro argues that the court violated his due process rights by not holding a trial. **See** Satiro's Br. at 17. His entire argument on this point reads:

> Article I, Section 6 of the Constitution of Pennsylvania states: "Trial by jury shall be as heretofore, and the right thereof remain inviolate." Given the totality of circumstances in the proceeding below, and the fact that the Parties were in a breach of contract lawsuit for almost four years, and considering his previous arguments as to why the Court erred in enforcing the settlement agreement, it is in the interest of Justice for Mr. Satiro to have his day in court.

**Id.** (emphasis omitted). Because Satiro did not present this slim argument to the trial court, he has waived it. **See** Pa.R.A.P. 302 (providing that issues may not be raised for first time on appeal).

and nothing prevented her from contacting her attorney. ***Lugg v. Lugg***, 64 A.3d 1109, 1114 (Pa.Super. 2013). We noted that "[d]aily badgering and one and one-half hours of pressure and negotiations does not rise to the level of coercion necessary to find duress." ***Id.*** at 1113-14 (Pa.Super. 2013) (internal quotation marks omitted). The burden rests with the party seeking to avoid the contract to prove duress with clear and convincing evidence. ***See Cooper v. Oakes***, 629 A.2d 944, 948 (Pa.Super. 1993).

We hold that the trial court did not err in enforcing the settlement, as Satiro's claims do not rise to the level of duress. Satiro faced no other danger than to proceed to trial, an event that had been impending for years, and for which Satiro and his attorney had had ample time to prepare. Satiro was given sufficient time to negotiate the settlement agreement, and was supported during the process by his attorney. Even if, after much pre-trial litigation and a grim trial prediction, Satiro felt some pressure to settle due to statements by his attorney and the trial judge, we cannot conclude that this set of circumstances constitutes a threat so severe as to overcome the mind of a person of ordinary firmness. His attorney and the trial judge's statements at most displayed impatience or exasperation. Neither urged him to settle; rather, they asked him to give a clear answer as to whether he agreed to the settlement. The record reflects that Satiro chose to settle rather than proceed to jury selection and risk losing his case.

We also disagree with Satiro's contention that the trial court was obligated to hold an evidentiary hearing following the open-court settlement, when Satiro, who bore the burden to prove duress, did not request one. The cases Satiro cites on this point, **Felix** and **Rago**, do not support his argument. In neither case did we hold that the trial court must hold an evidentiary hearing before enforcing a settlement agreement. In **Felix**, the appellant argued that the trial court had improperly selected a remedy for a breach of a settlement agreement without holding an evidentiary hearing. **See Felix**, 848 A.2d at 950 n.3. We rejected that argument, pointing out that the appellant had never asked the trial court to hold one. **Id.** at 950. Here, Satiro has the same problem as the appellant in **Felix** – he never asked the trial court for an evidentiary hearing.

In **Rago**, the appellant never argued, and we did not state, that an evidentiary hearing was necessary. Rather, we affirmed the denial of a petition to set aside a settlement agreement because the appellant had bound herself to the settlement by responding "yes" after the court asked her on the record if its recitation of the settlement terms was consistent with her understanding of it. **Id.** at 338-39. Satiro is in the same boat as the appellant in **Rago**: he agreed to the settlement on the record. Rather than supporting Satiro's argument, our actual holdings in both **Felix** and **Rago** cut against his position.

Satiro's further argument that his actions contradicted his on-the-record agreement to the settlement is likewise unavailing. "In ascertaining the intent

of the parties to a contract, it is their outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions, that matter." ***Espenshade v. Espenshade***, 729 A.2d 1239, 1243 (Pa.Super. 1999). "[O]nce the offeree has exercised his power to create a contract by accepting the offer, a purported revocation is ineffective as such." ***Mastroni-Mucker***, 976 A.2d at 518. Here, Satiro stated twice on the record that he agreed to the settlement. His hesitation to do so, and his later failure to abide by the settlement, cannot undo his earlier assent to the settlement agreement.

Satiro's first issue – that the court erred in denying his request for a continuance – fairs no better than his second issue. Satiro claims on appeal that the parties jointly sought a continuance from the court, but the request was denied. ***See*** Satiro's Br. at 9. However, no written continuance request appears in the certified record, and to the extent Satiro's statements on the record at the time of settlement could be construed as a continuance request, his agreement to the settlement rendered the request moot. ***See Erie Ins. Exch. v. Moore***, 175 A.3d 999, 1007 n.8 (Pa.Super. 2017) (stating appellant risks waiver if certified record lacks items necessary to evaluate appellant's argument); ***Erie Ins. Exch. v. Claypoole***, 673 A.2d 348, 353-54 (Pa.Super. 1996).

Finally, we turn to Appellees' request that we award attorneys' fees and costs associated with the appeal. We may award counsel fees upon a

- 11 -

determination "that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious." Pa.R.A.P. 2744. We see no indication that Satiro pursued this appeal in an attempt to be dilatory, obdurate, or vexatious. Nor do we find the appeal to be frivolous. **See Murphy v. Murphy**, 599 A.2d 647, 654 (Pa.Super. 1991) ("[A]n appeal is considered 'frivolous' and warrants the award of attorney fees if, either as a matter of fact or law, the appellant's contentions have no likelihood of success"). We therefore deny the request for attorneys' fees. As we affirm the order of the trial court, standard appeal costs are taxed against Appellant; no further costs are allowed. **See** Pa.R.A.P. 2741(2).

Order affirmed. Motion for counsel fees denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/28/18