J-A13002-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JACQUELINE PROMISLO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JONATHAN STEINHOUSE | : | No. 2755 EDA 2018 |

Appeal from the Order Entered August 9, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  D15078464

BEFORE:   SHOGAN, J., NICHOLS, J., and STRASSBURGER*, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED AUGUST 14, 2019**

Appellant, Jacqueline Promislo ("Wife"), appeals from an order refusing to enforce a Property Settlement Agreement ("Agreement") she and Appellee, Jonathan Steinhouse ("Husband"), signed on July 28, 2016, and refusing to find Husband in contempt of court.  We affirm in part, reverse in part, and remand.

The parties married in June 1999 and two children were born of the marriage:  a son, currently age nineteen, and a minor daughter, presently age seventeen.  Wife filed a divorce complaint on July 15, 2015, and the parties were divorced on October 17, 2016.  On July 28, 2016, the parties entered into the Agreement, which provided, *inter alia*, as follows:

8      CHILD SUPPORT AND ALIMONY

_____
*   Retired Senior Judge assigned to the Superior Court.

> 8.1 Effective August 1, 2016, [Husband] will pay support to [Wife] the rate of $4,500 per month, allocated $2,000 child support, and $2,500 to alimony *pendente lite* ("APL")/alimony through March 31, 2017. In April, 2017, the parties will recalculate child support and alimony using the support guidelines formula applied to their incomes/earning capacities at the time. In the event [Wife] has no income at that time, the calculation will be done using an earning capacity for her of $50,000. Effective April 1, 2017 and continuing until [Husband's] child support and alimony obligations have been recalculated **by agreement or court order,** [Husband] will pay support to [Wife] at the rate of $3,792 a month, allocated $1,854 for child support, and $1,938 to alimony, on an interim basis ("the interim period"). The recalculated support and alimony obligations shall be retroactive to April 1, 2017, and [Husband's] payments going forward will be adjusted to account for any shortfall or overpayment during the interim period.

Agreement, 7/28/16, at ¶ 8.1 (emphasis added). The Agreement also provided, "No modification or waiver of any of the terms of this Agreement shall be valid unless in writing and **signed by both parties**." *Id.* at ¶ 10.1 (emphasis added). Wife avers that the parties negotiated a Second Addendum to the Agreement but never signed it. Wife's Brief at 10; N.T., 8/9/17, at 7, 20. She offered an addendum, unsigned, and identified it as "M-2." N.T., 8/9/17, at 7–8, 11.

On May 30, 2018, Wife filed a "Petition for Enforcement and Contempt of the July 28, 2016 Property Settlement Agreement." The trial court conducted a hearing on August 9, 2018, following which it entered the appealed order, which provides:

> AND NOW, THIS 9TH DAY OF AUGUST, 2018, UPON CONSIDERATION OF THE MATTER BEFORE THIS COURT, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

> THE COURT DOES NOT FIND WILLFUL [sic] AND THEREFORE THE
> COURT DOES NOT FIND FORMER HUSBAND, JONATHAN I.
> STEINHOUSE IN CONTEMPT.
>
> THE REQUEST BY COUNSEL FOR FORMER WIFE, JACQUELINE
> PROMISLO THAT THE COURT ORDER FORMER HUSBAND TO PAY
> SUMS TO FORMER WIFE AT THIS TIME IS DENIED.

Order, 8/9/18 (*verbatim*). Wife filed a timely notice of appeal. Both Wife and the trial court complied with Pa.R.A.P. 1925.

Wife raises the following issues on appeal:

A. Whether the Trial Court abused its discretion by failing to enforce the parties' July 28, 2016 Property Settlement Agreement.

B. Whether the Trial Court abused its discretion by failing to determine that Husband breached the terms of the parties' Property Settlement Agreement for purposes of calculating Husband's child support and alimony obligation.

C. Whether the Trial Court abused its discretion and misapplied the law by failing to order Husband to pay the amounts due to Petitioner/Plaintiff under the parties' July 28, 2016 Property Settlement Agreement, which also details the remedies available for breach of the Agreement.

D. Whether the Trial Court abused its discretion and misapplied the law by failing to hold Husband in contempt of court for failing to pay Petitioner/Plaintiff the amounts due under the parties July 28, 2016 Property Settlement Agreement.

Wife's Brief at 6.

The trial court concluded that Wife did not meet "her burden of proof as to willful conduct on the part of [Husband] for a finding of contempt." Trial Court Opinion, 11/2/18, at 5. It further determined that the parties did not execute an amendment "or formal change" to the provision of their Agreement

- 3 -

regarding the amount Husband was to pay Wife for child support and alimony. *Id.* Without identifying support for its decision, the court also found that the record failed to provide "a clear determination of monies actually owed to [Wife] by [Husband]." *Id.* at 7. The trial court refused to enforce the Agreement.

The law of contracts governs marital settlement agreements.[1] *Bianchi v. Bianchi*, 859 A.2d 511, 515 (Pa. Super. 2004). Contract interpretation is a question of law, and this Court is not bound by the trial court's interpretation. *Stamerro v. Stamerro*, 889 A.2d 1251, 1258 (Pa. Super. 2005). Moreover, "[i]t is well-established that the paramount goal of contract interpretation is to ascertain and give effect to the parties' intent." *Lang v. Meske*, 850 A.2d 737, 739 (Pa. Super. 2004). "[W]here . . . the words of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the express language of the agreement itself. *Brosovic v. Nationwide Mut. Ins.*, 841 A.2d 1071 (Pa. Super. 2004)." *Bianchi v. Bianchi*, 859 A.2d 511, 515 (Pa. Super. 2004). While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of

---

[1] The Agreement was incorporated but not merged in the divorce decree. Agreement, 7/28/16, at ¶ 16.1; Divorce Decree, 10/17/16, at 1. "An agreement that is incorporated but not merged in the divorce decree survives as a separate, enforceable contract that is not subject to modification" unless the "agreement contains provisions specifically to the contrary." Wilder, 17 Pa. Family Prac. & Proc., §§ 7.6–7.7 (7th ed. 2008).

fact. ***Kripp v. Kripp***, 784 A.2d 158, 162 (Pa. Super. 2001), rev'd on other grounds by ***Kripp v. Kripp***, 849 A.2d 1159, 1163 (Pa. 2004).

We review the order denying Wife's petition to enforce the Agreement for abuse of discretion. ***Bennett v. Bennett***, 168 A.3d 238, 245 (Pa. Super. 2017). "An abuse of discretion is not lightly found, as it requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures." ***Id.*** ***Bennett*** further instructs that absent fraud, misrepresentation, or duress, parties are bound by the terms of their marital settlement agreements. ***Id.*** We observed in ***Bennett***, parties "are free to enter into bargains they later regret, and bad deals are as enforceable as good ones provided the agreement is free of fraud or duress." ***Id.*** (citing Wilder, [17] Pa. Family Prac. & Proc., [§ 7:3]). Indeed, this Court has stated, "It is evident our Supreme Court has already rejected [the] proposed standard that this [C]ourt delve into whether [an] agreement was fair and reasonable, absent any showing of fraud, misrepresentation or duress." ***Lugg v. Lugg***, 64 A.3d 1109, 1112 (Pa. Super. 2013). There are no allegations of fraud, misrepresentation, or duress in this case.

Wife's first three issues are intertwined and aver that the trial court abused its discretion in refusing to enforce the Agreement; we address them together. The Agreement provides that Husband was to pay Wife $4,500 per month. Agreement, 7/28/16, at ¶ 8.1. On April 1, 2017, and continuing until

"recalculated by agreement or court order," Husband was to pay Wife $3,792 per month "allocated $1,854 for child support, and $1,938 to alimony." *Id.*

At the August 9, 2018 hearing, Wife testified that the parties' attorneys agreed in September 2017 to Husband's monthly payment to Wife in the amount of $3,093,[2] allocated $2,060 for child support and $1,033 for alimony. N.T., 8/9/18, at 7. Wife further testified that Husband paid that amount in September and October 2017. *Id.* at 9. Wife stated that in March 2018, Husband paid Wife $159, and in the months April–July 2018, Husband paid Wife $371 per month. *Id.* at 10–11. There was no testimony regarding whether Husband made payments in November 2017 through February 2018, and if he did, the amount of those payments.[3] At the time of the hearing, August 9, 2018, Husband had not made a payment for August. *Id.* at 29.

Husband testified that when he executed the Agreement in July 2016, he was represented by counsel and "worked closely with Counsel." N.T., 8/9/18, at 26. He further admitted that the Agreement required him initially

---

[2] Wife initially mistakenly stated, or the notes of testimony contain a typographical error, that the amount was $3,103. The referenced amount actually totaled $3,093 per month, and subsequent references by the parties and the trial court were to the correct amount. *See* N.T., 8/9/18, at 8, 9, 15; Trial Court Opinion, 11/2/18, at 6.

[3] In her brief, Wife avers that Husband paid her $1,746 in November 2017; $1,656.16 in December 2017; $923.38 in January 2018; and $1663.40 in February 2018. Wife's Brief at 11 (citing Reproduced Record at 13a [N.T., 8/9/18, at 10]). However, her citation to the record is erroneous. Nowhere in the record is there any testimony regarding amounts Husband paid for the months of November 2017 through February 2018.

to pay Wife $4,500 per month, and beginning April 1, 2017, $3,792 per month on "an interim basis." *Id.* When asked about the parties' alleged addendum in September 2017 to lower Husband's monthly obligation to $3,093, Husband stated, "I can't recall if we reached an agreement," *id.*, but he never explained why he paid that amount in September and October 2017. Husband confirmed that the monthly amounts he paid in March through July 2018, were $159 in March and $371 thereafter. *Id.* at 30, 32. Husband testified that he voluntarily left his job because there were "some problems at my company and I took a new job." *Id.* at 24. He was promptly laid off "right after I started," and did not obtain a new position until the time of the hearing, to begin August 20, 2018, earning "a base salary of $130,000 plus commission." *Id.* at 24, 29–30. Husband did not file a petition to modify child support, however, until June 2018. *Id.* at 28–29.[4]

We have reviewed the record and conclude that it does not support the trial court's refusal to enforce the Agreement. As noted, this case does not involve any allegations of fraud, misrepresentation, or duress. In interpreting the Agreement as a contract, the trial court had "neither the power nor the authority to modify or vary the [writing] unless there is conclusive proof of fraud or mistake." *Bianchi*, 859 at 515. Because the language of the

---

[4] In its Pa.R.A.P. 1925(a) opinion, the trial court represented that a hearing was "scheduled [for] January 7, 2019," in "Domestic Relations Court" regarding Husband's June 20, 2018 petition. Trial Court Opinion, 11/2/18, at 8.

Agreement is clear and unambiguous, the court was compelled to examine the writing itself to give effect to the parties' understanding. *Lang*, 850 A.2d at 739–741.

The Agreement provided that it could not be modified or waived except in writing and signed by both parties; therefore, "the party seeking to show subsequent oral modification in the agreement must prove it by clear, precise, and convincing evidence, as in cases where fraud, accident, or mistake is alleged." *Nicolella v. Palmer*, 248 A.2d 20, 23 (Pa. 1968). While the Agreement contemplated that the parties would recalculate the amount of support in April 2017, any modification was required to be in writing and signed by the parties. There was no **signed** writing offered as evidence in this case, and the trial court correctly found that the addendum Wife referenced as "M-2" was not executed by the parties. Trial Court Opinion, 11/2/18, at 5. Therefore, the provision of the Agreement requiring that beginning April 1, 2017, Husband owed Wife "$3,792 per month, allocated $1,854 for child support, and $1,938 to alimony" should have been enforced. Agreement, 7/28/16, at ¶ 8.1. The trial court has not supported its decision to ignore the clear language of the Agreement, which resulted in an abuse of discretion. Indeed, the trial court ignored the applicable standard in deciding whether a contract must be enforced. Upon remand, the trial court is to enforce the mandate of paragraph 8.1 for the amounts Husband was

contractually obligated to pay Wife and adjust for any amounts Husband already has paid. Thereafter, Wife may enter judgment on the verdict.[5]

Contempt finding affirmed. Order reversed. Case remanded for proceedings consistent with this Memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/14/19

---

[5] Because Wife's fourth issue regarding the trial court's refusal to hold Husband in contempt is not supported by the requisite level of explanation or case law in support in Wife's appellate brief, we could find the issue waived. Wife's Brief at 19; *In re M.Z.T.M.W.*, 163 A.3d 462 (Pa. Super. 2017) (failure to develop argument and cite relevant authority results in waiver). Instead, we conclude that the trial court correctly determined that Husband was not in contempt, and we affirm that finding.