J-A13008-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOHNETTE KEISER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RONALD ALLEN REIDELL, SR. | : | |
| | : | |
| Appellant | : | No. 1519 WDA 2024 |

Appeal from the Order Entered October 31, 2024
In the Court of Common Pleas of Blair County Civil Division at No(s):
2019 GN 3566

BEFORE: BOWES, J., OLSON, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED: July 25, 2025**

Ronald Allen Reidell, Sr., ("Husband") appeals from the order that both denied the motion for contempt filed by Johnette Keiser ("Wife") and modified a previous order granting Wife's motion for enforcement of the parties' amended post-nuptial agreement. We affirm.

By way of background, Husband and Wife married in 1987 and executed a post-nuptial agreement on April 30, 2015 ("Agreement"). At the time the parties prepared and executed the Agreement, Wife had legal counsel but Husband did not. Relevantly, under the "Financial Disclosure and Property Distribution" section, Husband and Wife settled and divided their assets, including their house, boat, and vehicles. The house and two of the cars were to be sold with proceeds and liabilities split, and the boat and remaining third car was to go to Husband. Any remaining property was to be sold with

proceeds divided evenly, and Husband was to pay Wife a lump sum of $12,000. Additionally, this section provided that "[a]s part of the liquidation and distribution of assets[,] Husband shall be required to pay Wife the sum $2,000.00 per month . . . until the death of Wife[.]" Agreement, 4/30/15, at ¶ 6.V.

Paragraph ten of the Agreement generally released the parties from one another's estates. Pertinently, it stated:

> [Husband and Wife] forever discharge the other and the estate of such other . . . of and from any and all rights, title and interest, or claims in or against the property . . . of the other or against the estate of such other . . ., or any rights which either party may have or at any time hereafter have for past, present or future support or maintenance, alimony, alimony pendente lite, counsel fees, equitable distribution, costs or expenses, whether arising as a result of the marital relation or otherwise, except, and only except, all rights and agreements and obligations of whatsoever nature arising or which may arise under this Agreement or for the breach of any provision thereof.

Agreement, 4/30/15, at ¶ 10. Lastly, paragraph twelve specified that pensions and retirement accounts of Husband and Wife were to remain "the sole property of the person to whom it is titled." *Id*. at ¶ 12. As it relates to Husband's arguments in this appeal, the trial court determined that Husband's total monthly income reserved to himself exceeded $6,000. **See** Findings, 10/31/24, at ¶ 6.

In 2019, Wife filed for divorce. Husband retained counsel and the parties executed an amended post-nuptial agreement ("Amended Agreement"). Specifically, paragraph 6V was altered to provide that "Husband

shall be required to pay Wife the sum $1,667.00 per month . . . until the death of Wife, and is non-modifiable unless in writing. The parties agree that there are no back payments due and owing by Husband." Amended Agreement, 12/26/19, at 2. Otherwise, the Amended Agreement adopted the provisions of the Agreement.

A divorce decree was entered on March 23, 2022, which incorporated, but did not merge with, the Amended Agreement. A few years later, Husband failed to meet his obligation to make monthly payments to Wife. She filed a petition to enforce the Amended Agreement seeking, *inter alia*, attachment of one of Husband's pensions, specifically his Pennsylvania State Employees Retirement System ("PSERS") account, which paid him approximately $1,546 per month.

The court scheduled a hearing, at which Husband did not appear. His attorney conceded that Husband was not making payments to Wife as required. However, he argued that the Amended Agreement was unenforceable and inequitable. The court subsequently entered an order on September 20, 2024, which: (1) granted Wife's motion to enforce; (2) attached Husband's PSERS account; and (3) ordered Husband to pay $8,168 in arrearages to Wife ("September Order"). Notably, the court also stated that Husband was "given leave to file any appropriate motion or petition to review the terms of this order or the underlying post-nuptial agreement and order, as amended." Order, 9/20/24, at ¶ 5 (capitalization altered).

Shortly thereafter, Wife filed a petition for contempt asserting that Husband refused to follow the September Order. In response, Husband submitted an answer and new matter contending that paragraph 6V of the Amended Agreement was "inherently ambiguous with regard to duration and total amount of payment of equitable distribution." New Matter, 10/21/24, at ¶ 7.a. Husband also argued that this provision was impracticable because it was impossible for him to pay. *Id*. at ¶¶ 7.b.-c.

The court scheduled a hearing at which Husband testified. He explained that instead of compensating Wife, he was paying $1,500 per month on his credit card debt. Husband also attested that he signed the Agreement and Amended Agreement under "duress." N.T. Hearing, 10/29/24, at 30, 32. Specifically, he explained that although there were "no threats or anything[,]" Husband "had to get out of the marriage and [he] did what [he] had to do to terminate" it. *Id*. at 33-34. Additionally, Husband claimed that he was unaware that his payments to Wife would continue indefinitely.

The court entered an order and findings of fact on October 31, 2024 ("October Order"). It determined that each month Husband received $3,031.25 from his military pension, $1,546 from his PSERS account, and $1,753 in social security benefits. *See* Findings, 10/31/24, at ¶ 6. Husband's liabilities included a $1,300 monthly mortgage, $1,000 per month in taxes on his benefits, and approximately $25,000 in credit card debt. *Id*. at ¶ 8.

Although the court concluded that Husband violated the September Order, it determined that he did not do so willfully or volitionally. Rather, it found that he did not "have the means to make a lump sum payment" to Wife. *Id*. at ¶ 14. Nevertheless, the court concluded that the Amended Agreement was unambiguous "as it clearly states that payments to [Wife] will continue until the death of [Wife], [and] such payments [were] agreed upon by the parties with the assistance of their respective counsel[.]" *Id*. at ¶ 13. Thus, the court denied Wife's motion for contempt, but it modified the September Order to: (1) update the arrearages and attorneys' fees due from Husband to Wife; and (2) order Husband to pay $121 per month to Wife in addition to the pending attachment of Husband's PSERS account to complete his $1,667 monthly obligation. *See* October Order, 10/31/24, at ¶¶ 2.A-C.

The instant appeal followed.[1] The trial court did not order Husband to file a concise statement in accordance with Pa.R.A.P. 1925, and none was

---

[1] This Court issued rule to show cause why Husband's appeal should not be quashed as untimely where it appeared that, despite appealing from the October Order, he was actually challenging the September Order that granted Wife's motion to compel. *See* Pa.R.A.P. 903(a) (stating that an appeal must be taken within thirty days from the entry of a final order); *A.A. v. Glicken*, 237 A.3d 1165, 1168 (Pa.Super. 2020) ("This Court may raise jurisdictional issues *sua sponte*.").

A final order is one that disposes of all claims against all parties. *See* Pa.R.A.P. 341(b). The September Order granted Wife's motion to compel, but also gave Husband permission "to file a motion or to file any appropriate motion or petition to review the terms of this order or the underlying post-nuptial agreement and order, as amended." Order, 9/20/2024, at ¶ 5. Accordingly,
*(Footnote Continued Next Page)*

submitted. In lieu of an opinion pursuant to Rule 1925(a), the court directed

us to its September and October Orders. Husband presents the following

issues for our determination:

1. Did the trial court err and abuse its discretion by failing to strike from the parties' post[-]nuptial agreements the term indefinitely requiring [Husband] to pay [Wife] the monthly amount of $1,667 until the death of [Wife] because said requirement is unenforceable, unconscionable, and confiscatory?

2. Did the trial court err and abuse its discretion by failing to strike from the parties' post[-]nuptial agreements the term requiring [Husband] to pay [Wife] the ultimate monthly amount of $1,667 until the death of [Wife] given said term is inequitable and impracticable to perform?

3. Did the trial court err and abuse its discretion by attaching [Husband]'s monthly benefit from the [PSERS account] and awarding said asset to [Wife], contrary to the parties' post[-]nuptial agreements?

_____

the September Order was interlocutory. *See Iron City Constr., Inc. v. Westmoreland Wooded Acres, Inc.*, 288 A.3d 528, 530 (Pa.Super. 2023) (explaining that an interlocutory order does not dispose of all claims against all parties, and is not immediately appealable); *see also In re Adoption of R.J.S.*, 889 A.2d 92, 95 n.5 (Pa.Super. 2005) ("Generally, an order that anticipates further proceedings is interlocutory and unappealable.").

Husband followed the court's directive and filed an answer and new matter to Wife's motion for contempt, challenging the terms of the Amended Agreement. The court's subsequent October Order not only modified the September Order, it also disposed of Husband's arguments relative to the enforceability of the Amended Agreement. Further, it did not contain any provision providing Husband the opportunity to submit additional filings challenging the Amended Agreement. Accordingly, the October Order disposed of all claims against all parties and constituted a final, appealable order. *See Iron City*, 288 A.3d at 530. Thus, Husband's appeal therefrom is timely.

Husband's brief at 8-9.

We begin with the legal principles pertinent to our analysis.

Our standard of review of a court's order upholding an antenuptial [or post-nuptial] agreement is subject to an abuse of discretion or error of law. An abuse of discretion is not lightly found, as it requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures. A reviewing court will not usurp the trial court's fact[-]finding function.

*Estate of Renwick v. Renwick*, 248 A.3d 577, 580 (Pa.Super. 2021) (cleaned up). Additionally, "[t]he principles applicable to antenuptial agreements are equally applicable to post[-]nuptial agreements[.]" *Stackhouse v. Zaretsky*, 900 A.2d 383, 386 (Pa.Super. 2006) (cleaned up).

We address Husband's first two issues in tandem, as they require an assessment of the enforceability of the Amended Agreement. The law of contracts governs a post-nuptial agreement that has been incorporated, but not merged, into a divorce decree.[2] *See Bennett v. Bennett*, 168 A.3d 238, 245 (Pa.Super. 2017). Thus, the following law guides our review:

An agreement that is not merged stands as a separate contract, is subject to the law governing contracts[,] and is to be reviewed as any other contract. . . . [U]nder the law of contracts, in interpreting an agreement, the court must ascertain the intent of the parties. In cases of a written contract, the intent of the parties is the writing itself. If left undefined, the words of a contract are

_____

[2] Contrastingly, where a post-nuptial agreement has been merged into a divorce decree, "the agreement takes on all of the attributes of support orders for purposes of modification and enforcement. Such an agreement, therefore[,] is no longer enforceable as a contract but is subject to the full range of modification and change permitted to support orders." *Clark v. Clark*, 714 A.2d 427, 429 (Pa.Super. 1998) (cleaned up).

- 7 -

to be given their ordinary meaning. When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself.

*Id*. (cleaned up).

This Court has stated that "[a]bsent fraud, misrepresentation, or duress, parties are generally bound by the terms of their agreements." *Lewis v. Lewis*, 234 A.3d 706, 714 (Pa.Super. 2020). Therefore, "[c]onsideration of other factors such as the knowledge of the parties and the reasonableness of the bargain is inappropriate." *In re Estate of Long*, 615 A.2d 421, 422 (Pa.Super. 1992). In fact, our High Court has "expressly rejected an approach which would allow the court to inquire into the reasonableness of the bargain, or the parties['] understanding of the rights they were relinquishing." *Lugg v. Lugg*, 64 A.3d 1109, 1112 (Pa.Super. 2013) (citing *Stoner v. Stoner*, 819 A.2d 529, 533 (Pa. 2003)).

Post-nuptial agreements are presumed valid and binding, hence "the party seeking to avoid or nullify the agreement has the burden of proving the invalidity of the agreement by clear and convincing evidence." *Lewis*, 234 A.3d at 714. Notably, "[p]arties are free to enter into bargains they later regret, and bad deals are as enforceable as good ones provided the agreement is free of fraud or duress." *Bennett*, 168 A.3d at 245.

Husband proffers numerous reasons why he believes the Amended Agreement is invalid. He first explains that the Amended Agreement was "clearly meant to be a form of equitable distribution of the marital estate[,]"

and because the amount of money he is required to pay Wife greatly exceeds that value, it amounts to economic injustice. *See* Husband's brief at 16, 18, 30-32. He further asserts that a court may not, "under the guise of equitable distribution, impose terms upon a party that are exceptionally difficult or impossible to perform." *Id*. at 30. Husband also argues that the life-long duration of the $1,667 monthly payments to Wife is unenforceable, relying upon *Deasy v. Deasy*, 730 A.2d 500 (Pa.Super. 1999), to support his contention. *Id*. at 23-24. He generally states that his *pro se* status in executing the Agreement, his obliviousness to the life-long period of the monthly payments, and his difficulty in satisfying that obligation to Wife were equitable considerations that the court should have considered to render the Amended Agreement invalid. *Id*. at 31-33. Lastly, he declares that the Amended Agreement contains an ambiguity where it "releases each party from the other's respective estates without exception[,]" but simultaneously requires Husband to pay Wife for the remainder of her life. *Id*. at 32-33.

Husband's arguments fail for several reasons, three of which being: (1) the court imposed no terms on Husband that implicated equitable distribution of assets; (2) Husband mischaracterizes the release as without exception; and (3) Husband was, in fact, represented by counsel when he negotiated the Amended Agreement. Initially, we note that many of Husband's contentions allege that the court foisted an unreasonable and unfair burden onto him. However, Husband and Wife executed the Amended

Agreement privately. In other words, the court played no role in divvying up the parties' assets or in fashioning Husband's obligations. The considerations that a court must typically weigh when issuing an equitable distribution scheme as part of a divorce proceeding are therefore irrelevant. *Cf.* 23 Pa.C.S. § 3502(a) (listing factors that the court must consider in equitably dividing marital property as part of an action for divorce, including the amount and sources of income of each party and the "value of the property set apart to each party"); *see also Snyder v. Snyder*, 275 A.3d 968, 976 (Pa.Super. 2022) (explaining that in evaluating a court-ordered equitable distribution scheme, the objective is effectuating "economic justice"). Since the Amended Agreement is a contract that has been incorporated, but not merged, into the divorce decree, the court was limited to analyzing it pursuant to contract principles. *See Bennett*, 168 A.3d at 245. Thus, absent evidence of fraud, duress, or misrepresentation, the court had no power to declare that the Amended Agreement was unenforceable. *See id*.; *Lewis*, 234 A.3d 706.

In accordance with contract principles, the intent of the parties can be readily ascertained from the Amended Agreement because there is no ambiguity. Husband agreed that in exchange for Wife receiving a lump sum of $12,000 and $1,667 per month, he received the boat, one car, and retained the entire value of his retirement benefits. Husband specifically takes issue with the provision of the Amended Agreement that requires him to pay Wife

monthly for the remainder of her life.[3]   However, there is nothing unclear about that obligation.  ***See Kripp v. Kripp***, 849 A.2d 1159, 1163 (Pa. 2004) (stating that a contract is only ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense").

Additionally, contrary to Husband's contention, the Amended Agreement contains an exception to the mutual release from the parties' respective estates.  ***See*** Amended Agreement, 12/26/19, at ¶ 10 (providing for the general release "**except, and only except**, all rights and agreements and obligations of whatsoever nature arising or which may arise under this [Amended] Agreement or for the breach of any provision thereof" (emphasis added)).  Thus, based upon the plain language of the release, obligations that develop from the Amended Agreement, including Husband's monthly payments to Wife, are excluded.  Hence, there is no ambiguity.  We therefore turn to Husband's arguments related to fraud, duress, and misrepresentation.

---

[3] We reject Husband's reliance on ***Deasy*** in an attempt to invalidate the agreed-upon lifelong payments to Wife.  In that case, a *pro se* husband entered into a post-nuptial settlement agreement drafted by his wife's counsel, which ordered him to relinquish eighty percent of his income to the wife without a termination date.  ***Deasy***, 730 A.2d at 501.  The trial court determined that the contract was terminable at will by either party because it failed to contain a duration provision.  ***Id***.  Notably, we quashed the appeal without determining whether the contract in that matter was valid.  ***Deasy*** is therefore inapplicable.  In any event, ***Deasy*** is distinguishable because, here, the Amended Agreement, which was negotiated with the benefit of counsel, specifically provides a duration in that Husband is to pay Wife until her death.

Although Husband testified that he signed the Agreement under duress, we cannot conclude that his desire to terminate the marriage quickly and his accumulation of debt amounts to such a defense. *See Lewis*, 234 A.3d at 715 (defining duress, relevantly, as "that degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness"). Husband's *pro se* status in executing the Agreement also garners him no relief. His argument is significantly undercut by the fact that he contemporaneously completed a waiver of counsel stating that he understood the nature and terms of his legal obligations and rights, and that he entered the agreement freely and voluntarily. *See* Waiver of Counsel, 4/30/15. More significantly, once Husband obtained counsel, he continued to agree to pay Wife a set sum each month for the remainder of her life.

Overall, Husband has not demonstrated by clear and convincing evidence that the Amended Agreement is invalid. The court bore no responsibility in settling the parties' marital estate, thus there was no cause to consider the knowledge of the parties or the fairness of their settlement. *See In re Estate of Long*, 615 A.2d at 422; *Lugg*, 64 A.3d at 1112. Husband was free to enter into a bad bargain. Since the Amended Agreement is unambiguous, and given the absence of fraud, duress, or misrepresentation,

it is binding.[4]  **See Bennett**, 168 A.3d at 245.  Accordingly, based on the contract principles that govern this matter, Husband is not entitled to relief.

In his final argument, Husband contends that the trial court erroneously attached his PSERS account to satisfy his obligations to Wife.  Our Divorce Code states that:

> A party to an agreement regarding matters within the jurisdiction of the court under this part, whether or not the agreement has been merged or incorporated into the decree, may utilize a remedy or sanction set forth in this part **to enforce the agreement to the same extent as though the agreement had been an order of the court** except as provided to the contrary in the agreement.

23 Pa.C.S. § 3105(a) (emphasis added).  Under the prior version of this law, a property settlement agreement that was incorporated, but not merged, into a decree was not enforceable under the Divorce Code.  **See Peck v. Peck**, 707 A.2d 1163, 1164 (Pa.Super. 1998).  "However, the amendment neither add[ed] to nor subtract[ed] from the substantive rights of the parties under their property settlement agreement; rather, it merely provide[d] an additional procedural vehicle for the **enforcement** of their respective rights under their property settlement agreement."  **Id**. (cleaned up, emphasis in original).  As a method of enforcement, the code provides:

> If, at any time, a party has failed to comply with an order of equitable distribution, as provided for in this chapter **or with the terms of an agreement as entered into between the parties**,

---

[4] If the intent of the parties ever shifts, however, the Amended Agreement remains subject to written modification.  **See** Amended Agreement, 12/26/19, at 2.

after hearing, the court may, in addition to any other remedy available under this part, in order to effect compliance with its order:

. . . .

(4) order and direct the transfer or sale of any property required in order to comply with the court's order;

. . . .

(6) issue attachment proceedings . . . ;

(7) award counsel fees and costs;

(8) attach wages[.]

23 Pa.C.S. § 3502(e) (emphasis added). This Court has explained that § 3502 allows the court to attach pension payments "where a party fails to comply with either an equitable distribution order or the terms of an agreement entered into between the parties." *See Beltrami v. Rossi*, 726 A.2d 401, 403 (Pa.Super. 1999) (emphasis omitted).

The case of *Richardson v. Richardson*, 774 A.2d 1267 (Pa.Super. 2001), is illustrative. In that matter, the court equitably distributed the assets of a husband and wife and ordered, among other things, that sixty percent of the husband's pension was to be paid to the wife. *Id*. at 1268. After the husband failed to comply, the court found him in contempt and awarded the wife one hundred percent of his pension. *Id*. at 1269. This Court affirmed, explaining that the trial court's award of the entire pension to the wife did not "involve the initial distribution of the assets of the marriage." *Id*. Instead, "it resulted from the court's finding that [the husband] remained in willful

- 14 -

contempt of the orders" and was "designed to compensate [the wife] for the losses she incurred as a result of husband's failure to comply." *Id*. at 1269-70. Thus, the court awarded this property to the wife "to effectuate the support award that [the husband] evaded paying." *Id*. at 1270.

Since the Amended Agreement provided that pension and retirement accounts "shall remain the sole property of the person to whom it is titled[,]" Amended Agreement, 12/26/2019, at ¶ 12, Husband argues that the trial court erroneously attached his PSERS account. *Id*. at 35. He claims that it is immaterial that the seizure of his pension occurred post-divorce. *Id*. at 37.

The trial court did not err or abuse its discretion in attaching Husband's PSERS account as a remedy for Husband's non-compliance. Although Husband and Wife executed their post-nuptial agreement privately, pursuant to § 3105(a) and § 3502(e), the court had broad authority to effectuate their agreed-upon distribution of property as if it were court-ordered. As in *Richardson*, the court's attachment of Husband's PSERS account did not involve an initial division of that asset. The court only attached income from that source in order to effectuate Husband and Wife's bargain, which Husband has eluded. *See Richardson*, 774 A.2d at 1269-70. This argument likewise warrants no relief.

In sum, Husband has not demonstrated that the trial court abused its discretion or committed an error of law in upholding his obligation under the

Amended Agreement or attaching his PSERS account to effectuate compliance.

Accordingly, we affirm.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE:  7/25/2025